RICHARD I. HODAS & another[1] *vs.* KIMBERLY MORIN & others.[2]

Berkshire. June 30, 2004. - August 26, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Probate Court,* Jurisdiction. *Jurisdiction,* Probate Court, Equitable. *Parent and Child,* Gestational surrogacy. *Conflict of Laws.*

In an equity action brought by the plaintiffs, genetic parents who contracted with a gestational carrier to bear a child at a Massachusetts hospital, for a declaration of paternity and maternity and for a prebirth order establishing the plaintiffs' legal parentage, the presiding Probate and Family Court judge should have resolved the plaintiffs' complaint by applying Massachusetts law — the parties' choice of law as specified in their agreement — even though none of the individual parties resided in Massachusetts, where Massachusetts had a substantial relationship to the transaction, anchored in the parties' negotiated agreement for the birth to occur at a Massachusetts hospital and for a Massachusetts birth certificate and bolstered by the gestational carrier's receipt of prenatal care at a Massachusetts hospital in anticipation of delivery at the hospital, and where the significant contacts in this case were so widely dispersed that determination of the state of applicable law without regard to the parties' choice would present real difficulties. [548-553]

CIVIL ACTION commenced in the Berkshire Division of the Probate and Family Court Department on May 25, 2004.

After dismissal of the case, the matter was reported to the Appeals Court by *Marie E. Lyons,* J. An injunction pending appeal in the Appeals Court was ordered by *David A. Mills,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Renée S. Wetstein* for the plaintiffs.

*John F. Rogers* for Berkshire Health Systems, Inc.

MARSHALL, C.J. Does a Probate and Family Court judge have authority pursuant to G. L. c. 215, § 6, to issue prebirth judgments of parentage and to order the issuance of a prebirth rec-

---

[1]Janice Marie Anderson.

[2]Richard Morin and Berkshire Health Systems, Inc.

ord of birth, see *Culliton* v. *Beth Israel Deaconess Med. Ctr.*, 435 Mass. 285 (2001), where neither the genetic parents nor the gestational carrier with whom they contracted to bear a child reside in Massachusetts, but where the contract specifies that the birth occur at a Massachusetts hospital? A judge in the Probate and Family Court answered that question in the negative, and dismissed the genetic parents' (plaintiffs) uncontested equity action for a declaration of paternity and maternity and for a prebirth order. She then reported her decision to the Appeals Court. See Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996). On June 22, 2004, a single justice of the Appeals Court enjoined the defendant Berkshire Health Systems, Inc., corporate owner of Berkshire Medical Center in Pittsfield (hospital), from issuing any birth certificate for a child born of the gestational carrier, or filing the same with the Commissioner of Public Health. See G. L. c. 46, §§ 1, 3, 3A. On June 25, 2004, we transferred the matter here on our own motion. We conclude that, in the circumstances here, the plaintiffs are entitled to the relief they seek: judgments of paternity and maternity and a prebirth order establishing their legal parentage.[3]

1. *Facts.* The plaintiffs, who are married, reside in Connecticut. The gestational carrier and her husband, both nominal defendants, reside in New York. The hospital, the other nominal defendant, is a licensed Massachusetts hospital whose statutory duties include, among others, reporting information concerning births at the hospital to the city or town clerk where the birth occurred.

In April, 2003, the plaintiffs, the gestational carrier, and the gestational carrier's husband entered into a fifteen-page "Contract Between a Genetic Father, a Genetic Mother, a Gestational Carrier and Her Husband" (gestational carrier

---

[3]Based on the representation of the plaintiffs' counsel that the birth of the child would be induced imminently, on July 1, 2004, we issued an order with opinion to follow vacating the Probate and Family Court judge's order dismissing the plaintiffs' complaint. We also dissolved the injunction pending appeal ordered by the single justice of the Appeals Court. We further directed the Probate and Family Court to issue a judgment declaring the plaintiffs to be the legal parents of the unborn child and ordering the hospital, on the child's birth, to place the plaintiffs' names on the record of birth created pursuant to G. L. c. 46, §§ 1, 3, and 3A, as the child's father and mother, respectively.

agreement). The parties represented that each had been advised by counsel of their choice prior to entering into the agreement. Among other things, the gestational carrier agreement provided that any child resulting from the agreement would be delivered at the hospital, if at all possible,[4] and that in any event the gestational carrier would "take all reasonable steps to give birth to any child carried pursuant to this Agreement at a Hospital located in the State of Massachusetts." It is undisputed that the parties chose Massachusetts as the site of the birth in part to facilitate obtaining a prebirth order.[5]

The parties' preference for Massachusetts was further expressed in the following choice of law provision:

"The Gestational Carrier and [her] husband agree that they are entering into this Agreement with the intention that in accordance with the laws of the State of Massachusetts, they will take whatever steps are necessary to have the Genetic Father and the Genetic Mother named as the natural, legal and genetic parents, to have the Genetic Father and the Genetic Mother named as the father and mother, respectively, of [the] child on the child's birth certificate, and to permit the Genetic Father and the Genetic Mother to obtain physical custody of any child born as the result of this Agreement. . . . The parties

---

[4]Specifically, the gestational carrier agreement provided: "A normal delivery will take place at Berkshire Medical Hospital, in Pittsfield, MA; a high risk or pre-term delivery will take place at a hospital in Massachusetts, Vermont, or New Hampshire that is equipped to handle this situation and participates in the Gestational Carrier's insurance plan."

[5]In their brief to this court, the plaintiffs represented:

"The hospital was chosen because it was a good hospital and was located half way between both parties. This half way point made it convenient for all parties and allowed the plaintiffs to attend prenatal appointments, view ultrasounds and experience the joy of pregnancy, although vicariously. The plaintiffs also believed that they would be able to obtain a pre-birth order in Massachusetts and that they would not have to adopt their own genetic child or go through other costly and lengthy procedures."

At oral argument, the plaintiffs' counsel further represented that the gestational carrier's insurance would not provide coverage for delivery at a Connecticut hospital.

further agree that this Agreement shall be governed by Massachusetts law."

Approximately six months after the parties entered into the gestational carrier agreement, the gestational carrier was successfully implanted with an embryo produced from the male plaintiff's sperm and the female plaintiff's egg. The implantation took place in Connecticut. The gestational carrier received at least some prenatal care at the hospital. At oral argument on June 30, 2004, counsel informed the court that an induced delivery was planned at the hospital the following week.

2. *Jurisdiction.* In her report, the Probate and Family Court judge stated that "[t]he primary question presented is whether, under the circumstances of this case, this Court has jurisdiction to grant the relief requested?" The Probate and Family Court's jurisdiction over this case, however, is clear. First, as a general matter, the Probate and Family Court has subject matter jurisdiction in questions of law and equity concerning parentage. See, e.g., G. L. c. 209C; G. L. c. 215, § 6. More specifically, as we held in *Culliton* v. *Beth Israel Deaconess Med. Ctr.*, 435 Mass. 285 (2001), a Probate and Family Court judge has authority pursuant to G. L. c. 215, § 6, to consider a request for a prebirth order where, as here, "(a) the plaintiffs are the sole genetic sources of the [child]; (b) the gestational carrier agrees with the orders sought; (c) no one, including the hospital, has contested the complaint or petition; and (d) by filing the complaint and stipulation for judgment the plaintiffs agree that they have waived any contradictory provisions in the [gestational carrier] contract (assuming those provisions could be enforced in the first place)." *Id.* at 291-292. That the gestational carrier, her husband, and the plaintiffs all reside outside of Massachusetts does not bar the Probate and Family Court's subject matter jurisdiction under G. L. c. 215, § 6, because the equity statute poses no residency requirement.[6] Cf. G. L. c. 208, § 5 (in proceeding for divorce, plaintiff must be domiciled in Mas-

---

[6]No statutory directive limits the court's jurisdiction in actions relating to gestational agreements to Massachusetts residents. Cf. Uniform Parentage Act § 802, 9B U.L.A. 363 (Master ed. 2001 & Supp. 2004) ("A proceeding to validate a gestational agreement may not be maintained unless: the [gestational carrier] or the intended parents have been residents of this State for at least 90

sachusetts); G. L. c. 215, § 3 (for probate of will, decedent must have been inhabitant or resident of respective county at time of death).

Second, personal jurisdiction is also proper. The Probate and Family Court, of course, has personal jurisdiction over the hospital, a Massachusetts corporation. See G. L. c. 223A, § 2. Indeed, it is doubtful that any other State could grant the plaintiffs the injunction they seek requiring the hospital to report certain information about the child's parentage to Massachusetts officials. The Probate and Family Court's personal jurisdiction over the gestational carrier and her husband derives from their stipulation for entry of judgment in favor of the plaintiffs. *Vangel* v. *Martin*, 45 Mass. App. Ct. 76, 79 (1998) paraphrasing in parenthetical to *Precision Etchings & Findings, Inc.* v. *LGP Gem, Ltd.*, 953 F.2d 21, 25-26 (1st Cir. 1992) ("the defense of lack of personal jurisdiction . . . may be waived by express submission, conduct, or failure to assert the defense"). See Mass. R. Civ. P. 12 (b) (2), 365 Mass. 754 (1974). In short, the jurisdictional issues here are not problematic.

3. *Choice of law.* The driving issue in this case, rather, concerns choice of law. The interested couples come from different States; the chosen hospital from yet a third. None of the individual parties resides in the Commonwealth, yet they have contracted that Massachusetts law govern the gestational carrier agreement and, by extension, the petition for judgments of parentage and for a prebirth order. We must consider whether to respect their choice.[7]

The gestational carrier agreement implicates the policies of multiple States in important questions of individual safety, health, and general welfare. Complicating matters is the fact

days") and comment (noting that the ninety-day residency requirement is to "discourage forum shopping"). Moreover, the statutory scheme for the recording of births in Massachusetts makes no distinction between resident and nonresident parents. Pursuant to G. L. c. 46, § 1, each town clerk is responsible for recording "date of birth, place of birth, name and sex of child; names, places of birth, and dates of birth of both parents; and residence and birth surname of child's mother" for each birth that "occur[s] in the town."

[7]We are concerned here only with those portions of the gestational carrier agreement that pertain to the choice of Massachusetts law and the complaint to establish parentage and for a prebirth order. We have not been asked to express an opinion — nor do we do so — on the validity, construction, or enforceability of any other provision of the gestational carrier agreement.

that the laws of Connecticut, New York, and Massachusetts, the three States that potentially could govern the agreement, are not in accord. In Connecticut, where the genetic parents reside, gestational carrier agreements are not expressly prohibited by, and perhaps may be contemplated by, the recently amended statute governing the issuance of birth certificates. See Conn. Gen. Stat. c. 93, § 7-48a, 2004 Conn. Legis Serv. P.A. 04-255 (West 2004) ("On and after January 1, 2002, each birth certificate shall contain the name of the birth mother, except by the order of a court of competent jurisdiction . . ."). The gestational carrier resides in New York, a State that has expressed a strong public policy against all gestational carrier agreements. See N.Y. Dom. Rel. Law § 122 (McKinney 1999) ("Surrogate parenting contracts are hereby declared contrary to the public policy of this state, and are void and unenforceable").[8] Massachusetts, as we have noted, recognizes gestational carrier agreements in some circumstances. See *Culliton* v. *Beth Israel Deaconess Med. Ctr., supra*; *R.R.* v. *M.H.*, 426 Mass. 501 (1998).

In light of these differing State policies and the parties' declared intent to follow Massachusetts law, we look to our established "functional" choice of law principles and to the Restatement (Second) of Conflict of Laws, with which those principles generally are in accord.[9] *Bushkin Assocs., Inc.* v. *Raytheon Co.*, 393 Mass. 622, 631-632 (1985). As a rule, "[w]here

---

[8]Under New York law, a surrogate parenting contract includes an agreement where "a woman agrees . . . to be impregnated with an embryo that is the product of an ovum fertilized with the sperm of a man who is not her husband." N. Y. Dom. Rel. Law § 121(4) (McKinney 1999).

[9]Restatement (Second) of Conflict of Laws § 187(2) (1971) provides, in pertinent part:

"(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

"(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

"(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties' choice as long as the result is not contrary to public policy." *Steranko* v. *Inforex, Inc.*, 5 Mass. App. Ct. 253, 260 (1977), citing Restatement (Second) of Conflict of Laws § 187 (1971).[10] See *Morris* v. *Watsco, Inc.*, 385 Mass. 672, 674 (1982) ("Massachusetts law has recognized, within reason, the right of the parties to a transaction to select the law governing their relationship"). The Restatement similarly presumes that the law the parties have chosen applies, unless "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state" and is the State whose law would apply under § 188 of the Restatement "in the absence of an effective choice of law by the parties." Restatement (Second) of Conflict of Laws, *supra* at § 187(2). See note 14, *infra.*

Under the two-tiered analysis of § 187(2), we readily conclude that Massachusetts has a "substantial relationship" to the transaction. See § 187(2)(a). That substantial relationship is anchored in the parties' negotiated agreement for the birth to occur at a Massachusetts hospital and for a Massachusetts birth certificate to issue, and bolstered by the gestational carrier's receipt of prenatal care at a Massachusetts hospital in anticipation of delivery at that hospital. See § 187 comment f, *supra* at 566-567 (place of partial performance considered to be sufficient to establish a reasonable basis for the parties' choice of law).

Turning to the second prong of § 187(2), it is a close ques-

---

[10]*R.R.* v. *M.H.*, 426 Mass. 501 (1998), is not to the contrary. That case concerned a surrogacy agreement where the genetic mother (not married to the father) carried the child, was required to consent to the father's custody of the child prior to birth, and was to be paid $10,000 for being a gestational carrier. *Id.* at 503-504. The gestational carrier was a Massachusetts resident, the child was born in Massachusetts, and the genetic father and his wife were residents of Rhode Island. *Id.* at 503, 508. Although the gestational carrier contract provided that "Rhode Island Law shall govern the interpretation of this agreement," *id.* at 508, we applied Massachusetts law to invalidate the contract as contrary to Massachusetts public policy as expressed through G. L. c. 210, § 11A. *Id.* at 510-513.

tion whether applying the parties' choice of law would be "contrary to a fundamental policy" of another State with a "materially greater interest." See § 187(2)(b). Certainly the interests of New York and Connecticut are material and significant, for the contracting parties reside in these States. Nevertheless, the interests of New York and Connecticut may be at cross purposes here. New York, the home of the gestational carrier and her husband, expressly prohibits gestational carrier agreements in order to protect women against exploitation as gestational carriers and to protect the gestational carrier's potential parental rights. See N.Y. Dom. Rel. Law § 122.[11] New York has thus expressed a "fundamental policy" on a matter in which it has a great interest. Connecticut, the plaintiffs' home State, is silent on the question of gestational carrier agreements, but in any event does not expressly prohibit the plaintiffs from entering into such an arrangement. Massachusetts also has interests here, including interests in "establishing the rights and responsibilities of parents [of children born in Massachusetts] as soon as is practically possible" and "furnishing a measure of stability and protection to children born through such gestational surrogacy arrangements."[12] *Culliton* v. *Beth Israel Deaconess Med. Ctr.*, *supra* at 292.

However, even if we were to decide that New York had a "materially greater interest" than both Connecticut and Massachusetts, New York's policy would not operate to overrule the parties' choice of law unless New York would have been the applicable law in the absence of any articulated choice by the parties. The Restatement (Second) of Conflict of Laws § 187(2)(b) directs us to a list of factors enumerated in § 188 to determine what law would have applied if the contract itself

---

[11]Massachusetts also seeks to prevent the exploitation of women by prohibiting gestational carrier agreements that compensate the gestational carrier beyond pregnancy-related expenses. Such agreements "raise the concern that, under financial pressure, a woman will permit her body to be used and her child to be given away." *R.R.* v. *M.H.*, 426 Mass. 501, 511 (1998).

[12]While it is true that Massachusetts interests are contingent on the actual birth of a child in the Commonwealth, any order of a Massachusetts court concerning Massachusetts birth records of course will have minimal, if any, significance if the birth occurs outside the Commonwealth. No party argues otherwise.

were silent on the issue.[13] See *Bushkin Assocs., Inc.* v. *Raytheon Co., supra* at 632. Again, consideration of the factors listed in § 188 leads to inconclusive results. For example, the "place of contracting" and the "place of negotiation," see § 188(2)(a)-(b), are both unknown, although presumably these activities took place in New York or Connecticut, or both.[14] The "place of performance," see § 188 (2) (c), arguably is the intended place of birth (Massachusetts), or the place of prenatal care (at least partly in Massachusetts), or the place where the pregnancy evolved (New York), or the place where the genetic carrier was inseminated (Connecticut), or any combination of these. The location of the "subject matter of the contract," see § 188(2)(d), is equally difficult to determine, and the final consideration, the "domicil" of the parties (New York or Connecticut), see § 188(2)(e), in this case is not helpful. Thus, whatever New York's interest in protecting the gestational carrier and her husband, it is doubtful that the principles of § 188 would result in application of New York law to this particular contact.

"[W]here the significant contacts are so widely dispersed that determination of the state of the applicable law without regard to the parties' choice would present real difficulties," the Restatement instructs that the parties' choice of law will be

---

[13]The Restatement (Second) of Conflict of Laws § 188 (1971) provides, in pertinent part:

"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

"(d) the location of the subject matter of the contract, and

"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

[14]We note, however, that the gestational carrier agreement recites that the genetic parents consulted Rhode Island counsel concerning the agreement. Counsel for the gestational carrier and her husband is identified by name, but the locality of his practice is not.

honored. § 187 comment g, *supra* at 568. This conclusion comports with our functional conflict of laws analysis, which requires consideration of factors such as "uniformity of result, maintenance of interstate order, and simplification of the judicial task" and "the justified expectations of the parties." *Bushkin Assocs., Inc.* v. *Raytheon Co., supra* at 635.

We conclude, then, that the judge should have applied the parties' choice of law, the law of Massachusetts, to resolve the plaintiffs' complaint.[15] Although the judge in her decision prudently raised the issue of forum shopping in declining to consider the complaint, we are satisfied that, in the circumstances of this case, the parties' choice of law is one we should respect. We are also satisfied that our established conflict of laws analysis will work to prevent misuse of our courts and our laws.[16]

4. *Conclusion.* For the foregoing reasons, on July 1, 2004, we ordered that the judgment of the Probate and Family Court dismissing the plaintiffs' complaint be vacated, and the injunction pending appeal ordered by the single justice of the Appeals Court be dissolved. We remanded the case to the Probate and Family Court where a judgment was to enter declaring the plaintiffs to be the legal parents of the unborn child and ordering the hospital, Berkshire Health Systems, Inc., through its reporters, on the birth of the child, to place the plaintiffs' names on the record of birth created pursuant to G. L. c. 46, §§ 1, 3, and 3A, listing the plaintiffs as the father and mother, respectively, of the child.

---

[15]In light of our holding, we need not and do not consider the plaintiffs' constitutional arguments.

[16]In its submission to this court, the hospital has requested "guidance as to whether *Culliton* v. *Beth Israel Deaconess Med. Ctr.*, [435 Mass. 285 (2001)], is to be read to require judicial determination of parentage in cases of assisted reproductive technology, when, as here, there is independent verification of the implantation procedure [i.e., the implanting doctor's affidavit], no dispute as to the facts and no contrary claim by the gestational carrier." As we stated in *Culliton* v. *Beth Israel Deaconess Med. Ctr., supra* at 293, and elsewhere, the Legislature is the most appropriate forum to address issues raised by assistive technology in a comprehensive fashion. However, until and unless the Legislature speaks to the contrary, the Commonwealth's paramount concern to protect the best interests of children requires that parties seeking prebirth declarations of parentage or a prebirth order follow the procedures set out in *Culliton* v. *Beth Israel Deaconess Med. Ctr., supra.*