NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12846

ADOPTION OF DAPHNE.


Norfolk.     January 6, 2020. - April 2, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Adoption.  Minor, Adoption.  Parent and Child, Adoption.
    Jurisdiction, Probate Court, Personal, Equitable.  Probate
    Court, Jurisdiction, General equity power.  Practice,
    Civil, Adoption, Dismissal.



    Petition for adoption filed in the Norfolk Division of the
Probate and Family Court Department on November 7, 2018.

    Judgment of dismissal was ordered by Patricia A. Gorman, J.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Kathleen A. DeLisle for the father.
    Patience Crozier & Mary L. Bonauto, for GLBTQ Legal
Advocates & Defenders, amicus curiae, submitted a brief.
    Dean J. Hutchison, Natalie A. Kanellis, & Katelin P.
Gaskill, for Circle Surrogacy, LLC, amicus curiae, submitted a
brief.


    CYPHER, J.  In this case we determine whether, under G. L.

c. 210, § 1, the Norfolk Division of the Probate and Family

Court Department has jurisdiction over a petition for adoption (petition) where the petitioner, who is the child's biological father (father) and is named as the child's parent on her birth certificate, lives outside the United States with the child and his same-sex partner, and where the child was born outside of marriage to a gestational carrier (mother) who lives in Massachusetts. The father's first petition was rejected by a clerk for lack of jurisdiction, and his second was returned because it was completed on an outdated form. After the father filed his third petition, a judge dismissed the petition with prejudice due to lack of jurisdiction. We conclude that the Probate and Family Court has both subject matter jurisdiction under G. L. c. 210, § 1, and personal jurisdiction over the parties in this case. On January 8, 2020, we issued an order vacating the judgment of dismissal and instructing the Probate and Family Court to accept the petition for immediate filing. This opinion states the reasons for that order.[1]

Background. The petition is uncontested, and the facts of this case are undisputed. We now summarize those facts and provide an overview of the case's procedural background.

---

[1] We acknowledge the amicus briefs submitted in support of the father by GLBTQ Legal Advocates & Defenders (GLAD) and Circle Surrogacy, LLC.

The father,[2] the intended and genetic father of the child, together with his same-sex partner (partner), entered into a gestational carrier agreement with the mother, the child's birth mother. The child was conceived as the result of an in vitro fertilization procedure. During the procedure, eggs were retrieved from an egg donor selected by the father and partner and then fertilized with the father's sperm. One of the resulting embryos was transferred to the uterus of the mother on June 28, 2017. The embryo transfer procedure resulted in a successful clinical pregnancy, and the child was born on February 17, 2018, in Weymouth.

Shortly after the child's birth, the father and mother executed a voluntary acknowledgement of paternity (VAP) recognizing that the father is the genetic father of the child. The child's birth certificate lists both the father and mother as the child's parents. For the child to become a citizen of the father's home country, he would have to submit a birth certificate as part of the child's application for registration. Therefore, the mother agreed to forgo a prebirth determination of parentage pursuant to Culliton v. Beth Israel Deaconess Med. Ctr., 435 Mass. 285 (2001), and instead agreed to allow the father to pursue a postbirth adoption of the child in

_____

[2] The father is not a resident or citizen of the United States.

Massachusetts to terminate the mother's parental rights and responsibilities, to remove her name from the child's birth certificate, and to establish the father as the child's sole legal parent.[3]

On April 14, 2018, the mother signed a surrender form, pursuant to G. L. c. 210, § 2, indicating her desire to "voluntarily and unconditionally" surrender the child to the care and custody of the father. On April 30, 2018, the father filed the first of three petitions in the Probate and Family Court to establish his status as the child's sole legal parent. Following the birth, the father, partner, and child remained in Massachusetts pending the finalization hearing on the underlying petition. On May 22, 2018, the petition was rejected on the ground that "[i]n accordance with [G. L. c. 210, § 1], we do not have jurisdiction to accept the adoption of [the child]." In June 2018, the father, partner, and child returned to their home country.[4]

On July 18, 2018, the father filed a second petition in the Probate and Family Court, adding a memorandum of law addressing

---

[3] The father's home country does not allow unmarried couples to adopt. However, it is a signatory to the Hague Convention and therefore will recognize a decree of adoption from the United States.

[4] The mother consented to the child traveling to this country with the father and partner.

the jurisdiction issue previously raised by a clerk of that court. On August 9, 2018, the petition again was returned, this time because the father had not used the most updated petition form.[5] On November 7, 2018, the father filed his third petition, this time using the new petition for adoption and affidavit of petitioner(s) form. On March 8, 2019,[6] a judge dismissed the adoption with prejudice for the reason that the court lacked jurisdiction.[7] The father filed a notice of appeal on March 26, 2019. The case is now before this court on sua sponte transfer from the Appeals Court.

Discussion. Ultimately, the father's claim on appeal is an issue of statutory interpretation. Review of a question of

---

[5] According to the return form, the petition for adoption (petition) was last updated on March 31, 2014. Court staff could have and should have assisted the father in avoiding this mistake by informing him in the previous rejection that he also had filed the incorrect form.

[6] This was a delay of more than four months between the filing of the petition and its rejection. The Probate and Family Court Department's time standards require action on uncontested adoptions within thirty days of filing. Standing Order 1-06: Case Management and Time Standards for Cases Filed in the Probate and Family Court Department (2006) ("If a Petition is filed as uncontested, due to the filing of necessary surrenders or termination decrees, and notice is not required, a hearing shall be scheduled within thirty [30] days of the filing of the Petition").

[7] The judgment of dismissal does not contain an explanation for the judge's determination. Rather, it states, "after review of submissions it is determined that Massachusetts does not have jurisdiction over the matter."

statutory interpretation is de novo. Chin v. Merriot, 470 Mass. 527, 531 (2015). Additionally, the petition was dismissed without any evidentiary hearing or oral argument. "[W]here review is wholly based on documentary evidence, an appellate court stands in the same position as the . . . judge" in determining whether jurisdictional requirements are met (quotation and citation omitted). Commonwealth v. Moffat, 478 Mass. 292, 298 (2017) (in appeal from denial of G. L. c. 278A, § 3, motion, de novo review appropriate because review limited to consideration of motion and supporting documents).

"Under well-established principles of statutory construction, 'a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.'" Chin, 470 Mass. at 532, quoting Commonwealth v. Figueroa, 464 Mass. 365, 368 (2013). "Although we look first to the plain language of the provision at issue to ascertain the intent of the Legislature, we consider also other sections of the statute, and examine the pertinent language in the context of the entire statute." Chin, supra. "Courts must ascertain the intent of a statute from all its parts and from the subject

matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense." Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).

1. Subject matter jurisdiction under G. L. c. 210, § 1. We begin with the plain language of G. L. c. 210, § 1,[8] which provides in relevant part:

> "A person of full age may petition the probate court in the county where he resides for leave to adopt as his child another person younger than himself, unless such other person is his or her wife or husband, or brother, sister, uncle or aunt, of the whole or half blood. . . . If the petitioner has a husband or wife living, competent to join in the petition, such husband or wife shall join therein

---

[8] Because of the unavailability of a prebirth determination in the circumstances presented here, we are forced to decide this case under the adoption statute. As previously stated in Culliton v. Beth Israel Deaconess Med. Ctr., 435 Mass. 285, 291 (2001), "[a]s is evident from its provisions, the adoption statute was not intended to resolve parentage issues arising from gestational surrogacy agreements." Culliton, supra at 290-291, specifically highlights the delay in time that often accompanies adoption proceedings; this can impose legal and custodial responsibilities on a gestational carrier who has no genetic or intended relationship with a child. In this case, for example, the child is now over two years old, and the initial petition was filed six weeks after her birth. We strongly urge the Legislature to consider a more expedient process for obtaining postbirth judgments of parentage in the context of gestational surrogacy. Under the Uniform Parentage Act, which has not been adopted in Massachusetts, parental rights are automatically assigned to the intended parents, provided that the gestational surrogacy agreement is enforceable. See Uniform Parentage Act § 809, 9B U.L.A. 260 (Master ed. 2001). Other New England States have adopted similar legislation allowing for replacement certificates of birth and postbirth orders. See, e.g., Conn. Gen. Stat. § 7-48a; Me. Rev. Stat. Ann. tit. 19-A, § 1934; N.H. Rev. Stat. Ann. § 168-B:12; Vt. Stat. Ann. tit. 15C, § 804.

. . . . If a person not an inhabitant of this commonwealth desires to adopt a child residing here, the petition may be made to the probate court in the county where the child resides."

This section establishes five jurisdictional requirements before the final provision allowing for adoption by an out-of-State resident. Id. A petitioner must be (1) of "full age" adopting (2) a child younger than the petitioner, and (3) the child cannot be in one of the familial relationships to the petitioner as enumerated by the statute. Id. If the petitioner has a husband or wife, and he or she is competent to join the petition, (4) the spouse must join unless the court determines that the three conditions described by the statute are met.[9] Id. The petitioner also must file (5) in "the probate court in the county where he resides," unless the petitioner is "not an inhabitant of this commonwealth," in which case the petition must be filed in the probate court in the county where the child "resides." Id.

---

[9] "[T]he prayer of the petition may be granted although the spouse of the petitioner is not a party to the petition if the court finds: (i) the failure of the spouse to join in the petition or to consent to the adoption is excused by reason of prolonged unexplained absence, legal separation, prolonged separation, incapacity or circumstances constituting an unreasonable withholding of consent; (ii) the husband and wife are not in the process of an ongoing divorce; and (iii) the granting of the petition is in the best interests of the child." G. L. c. 210, § 1.

Here, the father was thirty-nine years old (i.e., of "full age") at the time he filed his third petition,[10] and the child was eight months old.  The child is his biological child, and this is the only familial relationship; none of the relationships prohibited by the statute applies.  The father is unmarried, so there is no requirement that his partner be joined.[11]  Because the father is not a Massachusetts resident, his petition must be filed according to the final provision of § 1.  Therefore, the only ambiguities are in the definitions of the words "residing" and "resides," which are each used once in § 1's final sentence:  "If a person not an inhabitant of this commonwealth desires to adopt a child residing here, the petition may be made to the probate court in the county where the child resides" (emphases added).

In Krakow v. Department of Pub. Welfare, 326 Mass. 452, 454 (1950), this court defined residency under G. L. c. 210, § 1, as the child's domicil.  The court in Krakow determined that the

---

[10] Although many of the father's arguments are based on the filing date of the first adoption petition, we conduct our analysis based on the third petition.  We note that the first petition should not have been rejected for the same reasons articulated here, but because the father did not appeal from that denial, we do not address it.

[11] The father lives in a country that criminalizes consensual same-sex intercourse and does not allow or recognize marriage equality.  Therefore, he and his partner are not married.

child's domicil was the domicil of his mother based on the ground that the child had been "abandoned by his father" or because the child was born outside of marriage.  Id.  See Restatement (Second) of Conflict of Laws § 14 (1971).  The domicil of the child is "the same as the domicil of their parent who has lawful custody of them."  Gil v. Servizio, 375 Mass. 186, 189 (1978).  Under the Massachusetts statute governing the custody of children born outside of marriage, "[p]rior to or in the absence of an adjudication or voluntary acknowledgement of paternity, the mother shall have custody of a child born out of wedlock."  G. L. c. 209C, § 10 (b).  See Smith v. McDonald, 458 Mass. 540, 545 (2010) ("Prior to a legal determination of paternity, the child's mother is vested with sole physical and legal custody, and that custody arrangement continues even after paternity is established until modified by a court").[12]

Here, the child was born to an unmarried gestational carrier, the mother, domiciled in Weymouth.  Because the child's birth mother is domiciled in Weymouth, the child's domicil at birth was also Weymouth.

---

[12] The father's postbirth signing of the voluntary acknowledgement of paternity (VAP) did not change the child's custody status or domicil at birth.  We discuss what impact, if any, a VAP may have on a child's domicil infra.

There are three questions remaining:  whether the mother's postbirth surrender affected the child's domicil; whether the father's postbirth VAP changed the child's domicil; and whether the father's removal of the child to his home country changed the child's domicil.  Because a domicil of origin is not lost until a new domicil is acquired,[13] the question actually is whether any of these actions caused the child to acquire a new domicil.

The mother's postbirth surrender would not cause the child to acquire a new domicil, as this would frustrate the primary purpose of the adoption statute.  See Adoption of Tammy, 416 Mass. 205, 210 (1993) ("The primary purpose of the adoption statute, particularly with regard to children under the age of fourteen, is undoubtedly the advancement of the best interests of the subject child").  "The change in phrasing 'Any inhabitant of this Commonwealth' . . . to 'Any person' . . . manifestly was intended to permit the adoption of resident children by petitioners who were domiciled in another State . . . ." Farnsworth v. Goebel, 240 Mass. 18, 21 (1921).  Because of this express desire that resident children may be adopted by petitioners domiciled in another State, as reflected in the

---

[13] See Tuells v. Flint, 283 Mass. 106, 109 (1933) ("A domicil once established continues until a new one is acquired regardless of changes in temporary sojourn").

language of G. L. c. 210, § 1, it would be illogical to interpret that the mother's surrender, pursuant to G. L. c. 210, § 2, would have any impact on the child's domicil without further court proceedings.

Additionally, although the father's signing of the VAP, which occurred before the mother's surrender, grants him "a constitutionally protected right to parent and maintain a relationship with his child," thereby making him a "legal parent," this does not change the child's domicil. Smith, 458 Mass. at 544. Even if we determined that signing the VAP alone, and without further adjudication, granted the father shared legal custody of the child, this could not mean that the child acquired a new domicil as a result. To declare so would mean that each time a court granted any custodial rights to a noncustodial parent, it would change a child's domicil.[14]

The final question is whether the father's removal of the child from Massachusetts in June 2018[15] changes the domicil of the child. Similar circumstances were presented in Krakow, 326 Mass. at 453, where the adopting parents took the child to live

---

[14] We also note that our inquiry into subject matter jurisdiction could have stopped here had the Probate and Family Court appropriately determined it had jurisdiction over the first petition filed two weeks after the child's birth.

[15] The father's exact date of departure with the child is not in the record before us.

with them in New York "a few weeks" after the child's birth, and filed the petition in Massachusetts a month after that. As we noted in Krakow, "the temporary abode of the minor with the [out-of-State] petitioners" did not change the child's domicil because "no decree granting the [adoption] petition could have been entered unless the minor had lived with the petitioners for at least six months" according to G. L. c. 210, § 5A (requiring that child reside in home of adoption petitioner for six months prior to petition decree). Krakow, supra at 454. Therefore, "[c]ompliance with this residential requirement, if held to effect a change in the child's domicil, would bar all petitions by nonresident petitioners. That result could not have been intended by the Legislature." Id. at 454-455. Consequently, despite the child's removal to the father's home country during the adoption proceedings, the child's domicil remained in Weymouth.[16] Because the child was "residing" in Weymouth, as defined under G. L. c. 210, § 1, we hold that the Probate and Family Court had subject matter jurisdiction to conduct a hearing on the father's petition.[17]

---

[16] To be clear, the child will acquire a new domicil with her legal and custodial parent pursuant to Gil v. Servizio, 375 Mass. 186, 189 (1978), when the adoption is finalized.

[17] This result is further supported by examining the adoption statute in conjunction with the Massachusetts Child Custody Jurisdiction Act, G. L. c. 209B, § 2 (a). According to the statute,

> "Any court which is competent to decide child custody matters has jurisdiction to make a custody determination by initial or modification judgment if:  (1) the commonwealth (i) is the home state of the child on the commencement of the custody proceeding, or (ii) had been the child's home state within six months before the date of the commencement of the proceeding and the child is absent from the commonwealth because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to reside in the commonwealth; or . . . (4) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that the commonwealth is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that a court of the commonwealth assume jurisdiction. . . ."

If this matter were a custody proceeding, the Probate and Family Court would have jurisdiction under G. L. c. 209B, § 2 (a) (1) (ii), if the father and the child left the United States as early as May 8, 2018, because Massachusetts would have been the child's home State "within six months" before the petition was filed and the mother still resides in the Commonwealth.  As mentioned previously, we do not know the father's exact date of departure; however, the court also would have jurisdiction under G. L. c. 209B, § 2 (a) (4), because there is no other State that would have jurisdiction to determine the custody of the child and it is in the best interest of the child that a Massachusetts court assume jurisdiction.  See, e.g., Adoption of Anisha, 89 Mass. App. Ct. 822, 832 (2016).  The term "best interest of the child" as found in § 2 (a) (4) is defined according to the requirements set forth in § 2 (a) (2) of the statute:  (i) that the child and at least one parent have a significant connection to the Commonwealth and (ii) that "there is available in the commonwealth substantial evidence concerning the child's present or future care, protection, training, and personal relationships."  See Redding v. Redding, 398 Mass. 102, 105-106 (1986).  Here, the mother still resides in the Commonwealth, where she gave birth to the child, and the child has legal domicil here, so the statutory requirements are met.

2. <u>Personal jurisdiction over the parties</u>. Because we do not know precisely on what ground the petition was dismissed, we also address the Probate and Family Court's jurisdiction over the parties.

Given that we already have established that both the mother and child were domiciled in Weymouth, they are both subject to the Probate and Family Court's jurisdiction. Although the father is not domiciled in Massachusetts, nor did he reside here, he consented to the court's personal jurisdiction by filing his petition in that court. See <u>Stearns</u> v. <u>Allen</u>, 183 Mass. 404, 407 (1903) ("persons domiciled in another State voluntarily bring themselves within the jurisdiction of the court by filing their petition, and therefore there can be no question as to jurisdiction of the adopting parent[]").

3. <u>Equity jurisdiction</u>. In a situation such as the one presented here, the Probate and Family Court also could have exercised equity jurisdiction pursuant to G. L. c. 215, § 6. See <u>Hodas</u> v. <u>Morin</u>, 442 Mass. 544, 547 (2004) ("as a general matter, the Probate and Family Court has subject matter jurisdiction in questions of law and equity concerning parentage"). In <u>Hodas</u>, we were asked to decide whether a Probate and Family Court judge had authority pursuant to G. L. c. 215, § 6, to issue a prebirth judgment of parentage where neither the genetic parents nor the gestational carrier with

16

whom they contracted resided in Massachusetts.  Hodas, supra at 544-545.  The only connection to Massachusetts was that the gestational carrier agreement specified that the birth occur at a Massachusetts hospital.  Id. at 546.  We noted that the "equity statute poses no residency requirement" nor is there a "statutory directive [that] limits the court's jurisdiction in actions relating to gestational agreements to Massachusetts residents."  Id. at 547 & n.6.  We see no reason to hold otherwise here.

Conclusion.  For the foregoing reasons, we issued an order on January 8, 2020, vacating the judgment of dismissal.  The Probate and Family Court has both subject matter jurisdiction under G. L. c. 210, § 1, and personal jurisdiction over the parties in this case.