JOHN A. FEENEY & another[1] *vs.* DELL INC.[2] & others.[3]

Middlesex. March 5, 2009. - July 2, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, CORDY, & BOTSFORD, JJ.

*Consumer Protection Act,* Class action, Arbitration. *Public Policy. Conflict of Laws. Contract,* Choice of law clause, Arbitration. *Federal Preemption. Practice, Civil,* Class action, Complaint.

This court concluded that it had jurisdiction to review a challenge to the enforceability of a class action prohibition embedded in a binding arbitration clause. [198-199]

This court declined to enforce a clause in a consumer contract effectively prohibiting class actions in any forum, where the clause violated the public policy of the Commonwealth in that it in effect sanctioned a waiver of the right to proceed in a class action under G. L. c. 93A [199-206]; moreover, Massachusetts's strong public policy in favor of class actions for small value claims under G. L. c. 93A rendered unenforceable a provision in the contract specifying that Texas law would apply, as Massachusetts's fundamental policy was materially greater than Texas's interest in minimizing its companies' legal expenses [206-208]; further, Federal law did not preempt a conclusion that such a clause was unenforceable as against public policy [208-210]; finally, the class action waiver was not severable from the provision of the contract compelling individual arbitration [210-211].

In a civil action challenging an order compelling arbitration pursuant to the terms of a consumer contract, this court ordered that the plaintiffs' complaint be dismissed without prejudice, on the ground that the plaintiffs' allegation that the defendant had erroneously collected sales tax attributable to the purchase of computer service contracts fell outside "the conduct of trade or commerce" as those terms are used in G. L. c. 93A, § 2 (*a*). [211-214]

CIVIL ACTION commenced in the Superior Court Department on March 10, 2003.

[1] Dedham Health and Athletic Complex, individually and on behalf of persons similarly situated.

[2] Formerly known as Dell Computer Corporation (Dell Computer).

[3] Dell Catalog Sales Limited Partnership (Dell Catalog); Dell Marketing Limited Partnership (Dell Marketing); Qualxserv, LLC (Qualxserv); and BancTec, Inc. (BancTec). Except where necessary to differentiate among them, we refer to the Dell defendants — Dell Inc., Dell Catalog, and Dell Marketing — collectively as "Dell." We use "defendants" when referring collectively to all of the defendants.

Motions to vacate an arbitration award, to reconsider orders compelling arbitration, and to confirm the arbitration award and to dismiss with prejudice, filed on February 1, 2008, were heard by *Thayer Fremont-Smith,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Edward D. Rapacki* (*Joseph M. Makalusky* with him) for the plaintiffs.

*John A. Shope* (*Kirk G. Hanson* with him) for the defendants.

The following submitted briefs for amici curiae:

*Dwight Golann,* pro se.

*Ben Robbins, Martin J. Newhouse, & Jo Ann Shotwell Kaplan* for New England Legal Foundation & others.

*Martha Coakley,* Attorney General, & *Matthew H. Schrumpf & Jennifer Grace Miller,* Assistant Attorneys General, for the Commonwealth.

MARSHALL, C.J. We decide in this case whether a statutory right to participate in class action lawsuits can permissibly be foreclosed by a provision in a consumer contract compelling individual arbitration. The plaintiffs, John A. Feeney and Dedham Health and Athletic Complex (Dedham Health), appeal from an order of a judge in the Superior Court compelling arbitration of their claims — brought as a putative class action — alleging that Dell improperly collected Massachusetts sales tax on the purchase of optional service contracts sold in connection with the purchase of Dell computers when (according to the plaintiffs) no such tax was due, and that the collection of such tax violated the Massachusetts consumer protection act, G. L. c. 93A. We conclude that the provision compelling individual arbitration in the plaintiffs' consumer contracts is not enforceable because it is contrary to the fundamental public policy of the Commonwealth favoring consumer class actions under G. L. c. 93A. We also conclude, however, for reasons we shall explain, that because the plaintiffs' complaint does not contain sufficient allegations to make out a claim under G. L. c. 93A, it should be dismissed without prejudice. We reverse the order compelling arbitration and remand for further proceedings.[4]

1. *Factual background.* We summarize the relevant facts from

---

[4]We acknowledge the amicus briefs filed by the Commonwealth and Professor

the judge's memorandum of decision and from undisputed facts in the record. Dell Catalog Sales Limited Partnership (Dell Catalog) and Dell Marketing Limited Partnership (Dell Marketing), wholly owned subsidiaries of Dell Inc. (formerly Dell Computer Corporation), sold computers and related products to consumers and businesses and, in connection with such sales, also sold optional computer hardware service contracts under which Banc-Tec, Inc. (BancTec); QualxServ LLC; or Dell Marketing agreed to provide onsite computer repairs to the purchasers. Feeney and Dedham Health purchased Dell computer hardware from Dell Catalog and Dell Marketing, respectively, and optional service contracts provided by either Dell Marketing or BancTec.[5] Dell Catalog and Dell Marketing collected sales tax on the plaintiffs' respective optional service contracts, totaling $13.65 from Feeney and $215.55 from Dedham Health.[6]

The "Dell Terms and Conditions of Sale"[7] (terms)[8] in effect at the time of the plaintiffs' purchases contain an arbitration clause compelling arbitration of any claim *against* Dell (but not binding Dell in connection with any claims it may have against a customer) and mandating that any such claims be arbitrated on

Dwight Golann in support of the plaintiffs, and an amicus brief filed by New England Legal Foundation, Associated Industries of Massachusetts, and Retailers Association of Massachusetts in support of the defendants.

[5]The parties variously state that Feeney purchased one service contract. The Feeney invoice, however, indicates that Feeney purchased two service contracts, and the complaint refers to "contracts." The number of contracts is germane only to the issue of the amount of tax charged on service contracts, and accordingly the amount of damages. The discrepancy appears not to be a dispute among the parties at present.

[6]Dell claims, and the plaintiffs have not alleged and do not otherwise contend, that it remitted all sales tax collected on the purchase of optional service contracts by the plaintiffs to the Commonwealth.

[7]The terms and conditions of sale (terms) specify that "Dell" refers to "the Dell entity named on the invoice."

[8]The terms in effect at the time of Feeney's purchase provide, in part: "This Agreement contains the terms and conditions that apply to purchases by Home, Home Office, and Small Business customers from the Dell entity named on the invoice ('Dell') that will be provided to you ('Customer') on orders for computer systems, related products, and/or services and support sold by Dell in the United States. By accepting delivery of the computer systems, other products, and/or services and support described on that invoice, Customer agrees to be bound by and accepts these terms and conditions." The corresponding section of the terms applicable to Dedham Health's purchases contains slight differences not germane to this appeal. See note 12, *infra*.

an individual basis.[9] Specifically, the terms provide that claims against Dell "arising from or relating to this Agreement" shall be resolved "exclusively and finally" by arbitration, and that the arbitration "will be limited solely to the dispute or controversy between Customer and Dell."[10] The effect of these provisions is to prohibit a Dell customer from participating in a class action — whether by litigation or arbitration — against Dell.[11]

The terms also include a choice-of-law provision that provides: "This agreement and any sales thereunder shall be governed by the laws of the State of Texas, without regard to conflicts of laws rules."[12]

---

[9]Although the plaintiffs argued in the Superior Court that they did not "knowingly consent" to the Dell terms, and argued to the single justice of the Appeals Court that Dell's "one-sided adhesion contract" was not "valid" in part because it contained no "affirmative manifestation" of their agreement, the plaintiffs do not renew those arguments here, and we do not consider them.

[10]The paragraph titled "Binding Arbitration" in the terms applicable to Feeney provides in full: "ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, INTENTIONAL TORT, AND EQUITABLE CLAIMS) AGAINST DELL, its agents, employees, successors, assigns, or affiliates (collectively for purposes of this paragraph 'Dell'), arising from or relating to this Agreement, its interpretation, or the breach, termination, or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchase SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect . . . . The arbitration will be limited solely to the dispute or controversy between Customer and Dell. Any award of the arbitrator(s) shall be final and binding on each of the parties and may be entered as a judgment in any court of competent jurisdiction. Information may be obtained and claims may be filed with the NAF . . . ." The corresponding paragraph in the terms applicable to Dedham Health includes a provision concerning warranty claims that is not relevant to this appeal.

[11]Although the "Binding Arbitration" provision of the terms, see note 10, *supra*, limiting arbitration "solely to the dispute or controversy between Customer and Dell" does not expressly prohibit all class actions, all parties assume that the effect of the provision is to foreclose customer class actions against Dell, and we see no reason to conclude otherwise.

[12]Although the terms in effect at the time of Feeney's purchase differ slightly from those in effect at the time of some of Dedham Health's purchases, see note 10, *supra*, the pertinent provisions of the arbitration and choice-of-law clauses are identical.

2. *Prior proceedings.* a. *Prearbitration.* Feeney commenced a putative class action against Dell Computer Corporation (Dell Computer) in March, 2003,[13] alleging that its "deliberate and systematic practice" of charging and collecting from plaintiffs and other Massachusetts residents monies falsely characterized as a lawful sales tax on the purchase of optional service contracts for computers constituted "unfair or deceptive acts or practices" in violation of G. L. c. 93A and regulations issued by the Attorney General of Massachusetts.[14] See G. L. c. 93A, § 2.[15] Asserting that they and other Massachusetts customers had suffered damages because Dell Computer caused them to pay monies for a "tax" that had not been imposed by any Massachusetts taxing authority, the plaintiffs sought relief under provisions of the consumer protection act providing for class actions, G. L. c. 93A, §§ 9 (2)[16] and 11.[17] On July 3, 2003, Dell Computer moved to stay the proceedings and to compel arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 4 (2000). The plaintiffs responded that the prohibition on class actions in the arbitration clause was unconscionable and undermined "the very purpose of the Massachusetts Consumer Protection Act." The motion to

---

[13]The original complaint named Feeney as the sole plaintiff; Dedham Health was added as a plaintiff in the first amended complaint. Dell Computer Corporation was named as the sole defendant in the original complaint; Dell Catalog, Dell Marketing, QualxServ, and BancTec were later added as defendants.

[14]The complaint also alleged that Dell improperly collected sales tax on shipping and handling charges for the delivery of computers and computer products. That allegation is not before us.

[15]General Laws c. 93A, § 2, provides in pertinent part: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

[16]General Laws c. 93A, § 9 (2), provides in pertinent part: "Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons . . . ."

[17]General Laws c. 93A, § 11, applicable to persons engaged in business, provides in pertinent part: "Any persons entitled to bring such action may, if the use or employment of the unfair method of competition or the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons . . . ."

compel arbitration should be denied, they argued, because, inter alia, the terms unilaterally preclude class actions. A judge in the Superior Court allowed Dell Computer's motion to compel arbitration without decision, and the plaintiffs sought interlocutory review pursuant to G. L. c. 231, § 118, first par.[18] A single justice of the Appeals Court denied the plaintiffs' petition.[19],[20]

b. *Arbitration.* Unable to appeal from the decision of the single justice, see *Ashford* v. *Massachusetts Bay Transp. Auth.*, 421 Mass. 563, 566-567 (1995), Feeney and Dedham Health each filed a claim of arbitration "under protest" in November, 2004.[21] Their requests for class certification were denied by an

---

[18]The Federal Arbitration Act (FAA) provides that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any *United States district court* . . . for an order directing that such arbitration proceed in the manner provided for in such agreement" (emphasis added). 9 U.S.C. § 4 (2000). In their opposition to Dell's motion to compel arbitration, the plaintiffs argued that this section of the FAA "has no application to proceedings in state courts" and that it therefore did not provide the Superior Court with the authority to compel arbitration. The judge in the Superior Court did not address the argument. In affirming the allowance of Dell's motion, the single justice of the Appeals Court stated that it was not "meaningful" whether Dell Computer "properly proceeded, and the judge properly acted" under 9 U.S.C. § 4 because the order "could have been entered" pursuant to the analogous section of the Massachusetts Uniform Arbitration Act, G. L. c. 251, § 2 (*a*). That section provides that a party may apply "to the superior court" for an order compelling arbitration. The plaintiffs do not renew their procedural argument on appeal, and we do not address it.

[19]The single justice concluded that the plaintiffs had "agreed to the Terms and Conditions of Sale, including the arbitration and choice-of-law provisions, by accepting delivery of the products or services." The single justice also determined that it was "unclear" whether a waiver of a right to bring a class action was valid in Massachusetts, and requested additional briefing on the matter. After supplemental briefing, the single justice denied the plaintiffs' petition, concluding that, although the "effect" of the binding arbitration provision was "to preclude all class action claims with respect to the purchases to which the agreement relates," the right to commence class actions under G. L. c. 93A was not a "substantial public policy concern" requiring denial of the enforcement of an arbitration provision.

[20]After the single justice ruled, Dell Catalog, Dell Marketing, Qualxserv, and BancTec filed a motion to stay proceedings and to compel arbitration on June 25, 2004. A judge in the Superior Court allowed that motion, concluding that the additional defendants could invoke the terms' arbitration provision "based on agency law, equitable estoppel, and third-party beneficiary principles."

[21]Subsequently, Feeney and Dedham Health each requested that the National Arbitration Forum (NAF) decline to arbitrate their respective disputes. In February, 2005, NAF's director denied those requests.

arbitrator of the National Arbitration Forum (NAF). Relying on the provisions of the Dell terms and on "[c]lear rules of contract interpretation and construction," the arbitrator concluded that "class action relief has been waived, by the parties" and was not available in the arbitration despite the plaintiffs' "compelling arguments in favor of this relief." The arbitrator conducted a consolidated hearing on the merits of the plaintiffs' individual claims, ruled in favor of the defendants on the merits,[22] and dismissed the plaintiffs' respective claims with prejudice.

c. *Postarbitration.* In February, 2008, the plaintiffs moved in the Superior Court to vacate the arbitration award and to reconsider the orders allowing the defendants' motion to compel arbitration. The defendants responded by moving to confirm the arbitration award and to dismiss the case. A different judge denied the plaintiffs' motions, allowed the defendants' motion,[23] and dismissed the case with prejudice. The plaintiffs appealed, and we granted their application for direct appellate review.

3. *Jurisdiction and standard of review.* The defendants argue that because the arbitrator declined the plaintiffs' request to certify a class, that decision may not now be reviewed. We reject the argument. Although the plaintiffs disagree with the arbitrator's decision declining to certify a class, their challenge here is to the order compelling arbitration in the first instance, and the plaintiffs thus present a "gateway dispute about whether the

---

[22]The arbitrator concluded that "[b]ased on the written agreement that Texas law will apply to their transactions, the [plaintiffs] are not able to maintain their cause of action under [G. L. c. 93A]." Even if G. L. c. 93A applied, the arbitrator found that none of the defendants "committed unfair or deceptive acts or practices . . . engaged in dishonesty, fraud, deceit or misrepresentation" or "engaged in any unconscionable conduct toward the [plaintiffs]."

[23]The judge denied the motion for reconsideration "for reasons stated in opposition." In the memorandum and order on the motion to vacate the arbitration award, the judge concluded that it was "not necessary to decide" whether the arbitrator erred in ruling that Texas law applied because the arbitrator found, in the alterative, that no violation of G. L. c. 93A had been shown. The judge also rejected the plaintiffs' claim of a per se violation of G. L. c. 93A, concluded that it was "moot" whether the arbitrator's refusal to certify a class action was error (because the arbitrator had found for the defendants on the c. 93A claim), and, finding no evidence that the arbitrator had a conflict of interest, declined to weigh the evidence in order to overturn the arbitrator's findings of fact.

parties are bound by a given arbitration clause," an issue for judicial resolution. *In re Am. Express Merchants' Litig.*, 554 F.3d 300, 311 (2d Cir. 2009), quoting *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Where, as here, the plaintiffs challenge the enforceability of a class action prohibition embedded in a binding arbitration clause, they are "plainly" challenging "the validity of the parties' agreement to arbitrate," and a court is the appropriate forum for such a challenge. *In re Am. Express Merchants' Litig.*, *supra*. See *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U.S. 440, 445 (2006), quoting *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967) (courts may adjudicate challenge "of the arbitration clause itself").

We review the decision on the motion to compel arbitration de novo. *Commonwealth* v. *Philip Morris, Inc.*, 448 Mass. 836, 844 (2007), citing *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007). See *Kristian* v. *Comcast Corp.*, 446 F.3d 25, 31 (1st Cir. 2006) (evaluating District Court's denial of motion to compel arbitration de novo).[24]

4. *Public policy.* The plaintiffs argue that the class action prohibition in Dell's terms "contravenes Massachusetts public policy."[25][26] We agree. It is "universally accepted" that public policy sometimes outweighs the interest in freedom of contract,

---

[24]Although this appeal came after the plaintiffs' motions to vacate the arbitrator's award and to reconsider the order allowing the motion to compel arbitration were denied, because the plaintiffs' argument on appeal is that their claims should not have been sent to arbitration in the first instance, we review the order allowing the motion to compel arbitration.

[25]The plaintiffs also argue that the class action prohibition is "unconscionable" and violates the Federal law of arbitrability. Because we conclude that the prohibition is unenforceable as against public policy, we need not address these arguments. The plaintiffs have not argued that their G. L. c. 93A claims are otherwise not arbitrable. See *Hannon* v. *Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 816 (1982).

[26]Other courts that have rejected class action prohibitions in consumer contracts as unenforceable have tended to base their decisions on grounds of unconscionability or on the Federal substantive law of arbitrability rather than on public policy grounds. However, the reasoning of those courts have often overlapped and incorporated public policy rationales. See, e.g., *Kristian* v. *Comcast Corp.*, 446 F.3d 25, 60 & n.22 (1st Cir. 2006) (declining to enforce class action bar under Federal arbitration law; similar decisions based on State law unconscionability grounds "contain reasoning that mirrors our own"; both analyses emphasize "frustration of the right to pursue claims granted by

and in such cases the contract will not be enforced. *Beacon Hill Civic Ass'n* v. *Ristorante Toscano, Inc.*, 422 Mass. 318, 321 (1996), citing *Spence* v. *Reeder*, 382 Mass. 398, 413 (1982); *Broussard* v. *Melong*, 322 Mass. 560, 561 (1948); Restatement (Second) of Contracts § 179 (1981); 6A A. Corbin, Contracts § 1375 (1962); and 6 S. Williston, Contracts § 12:4 (R. Lord 4th ed. 1995). See *A.Z.* v. *B.Z.*, 431 Mass. 150, 160 (2000) ("It is well established that courts will not enforce contracts that violate public policy"). See also *id.* at 160 n.24 (noting numerous cases in which this court has "in a variety of contexts" refused to enforce contracts because of conflict with public policy). " 'Public policy' in this context refers to a court's conviction, grounded in legislation and precedent, that denying enforcement of a contractual term is necessary to protect some aspect of the public welfare." *Beacon Hill Civic Ass'n* v. *Ristorante Toscano, Inc.*, supra, citing *Somerset Sav. Bank* v. *Chicago Title Ins. Co.*, 420 Mass. 422, 431 (1995). See *A.Z.* v. *B.Z.*, supra at 160-161, citing *Capazzoli* v. *Holzwasser*, 397 Mass. 158, 160 (1986) (we "look to the expressions of the Legislature and to those of this court" to determine public policy).

Here, expressions of three branches of Massachusetts government indicate that the public policy of the Commonwealth strongly favors G. L. c. 93A class actions. First, the Legislature has expressly provided for such mechanisms, G. L. c. 93A, §§ 9 (2) & 11, and, as we discuss *infra*, the legislative history of those enactments demonstrates that the Legislature specifically intended to provide for the vindication of small-value claims. We have, in turn, recognized that G. L. c. 93A, and in particular, the class action provision in § 9 (2), "was designed to meet a pressing need for an effective private remedy," *Baldassari* v. *Public Fin. Trust*, 369 Mass. 33, 40-41 (1975). This court has cautioned that a judge deciding a request for class certification under § 9 (2) "must" bear in mind this "pressing need," and that "traditional technicalities are not to be read into the statute in such a way as

statute"); *Ting* v. *AT&T*, 319 F.3d 1126, 1130, 1152 (9th Cir. 2003) (affirming conclusion that provision banning class actions was unconscionable, noting that District Court had concluded that provision was unconscionable and against California public policy); *Fiser* v. *Dell Computer Corp.*, 144 N.M. 464, 469 (2008) (Dell's class action prohibition substantively unconscionable because it violates New Mexico public policy).

to impede the accomplishment of substantial justice." *Aspinall* v. *Philip Morris Cos.*, 442 Mass. 381, 391-392 (2004), quoting *Fletcher* v. *Cape Cod Gas Co.*, 394 Mass. 595, 605-606 (1985). This court has also recognized that the requirements for class certification under the statutory class action provision in § 9 (2) are easier to satisfy than under Mass. R. Civ. P. 23, 365 Mass. 767 (1974). See *Ciardi* v. *F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 62-63 n.17 (2002) (provisions of rule 23 are "more burdensome" than those of § 9 [2]); *Baldassari* v. *Public Fin. Trust, supra* at 40 (G. L. c. 93A "has a more mandatory tone. We do not believe that the subsequent adoption of Rule 23 was intended to curtail any remedial rights granted by the statute"). Finally, the Attorney General, on behalf of the Commonwealth, has filed an amicus brief in this case asserting that the Dell class action prohibition "violates the public policy in favor of class actions" reflected in G. L. c. 93A.

The legislative history of G. L. c. 93A further demonstrates that its class action provisions evidence a strong public policy in favor of the aggregation of small consumer protection claims. When originally enacted in 1967, G. L. c. 93A contained no provision for private remedies; only the Attorney General was empowered to bring enforcement proceedings. *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 697-698 (1975). As a result of the number of complaints lodged with the Attorney General, "it became clear that private remedies were needed." *Id.* at 699. As a result, G. L. c. 93A was amended in 1969, see St. 1969, c. 690, to provide for an "effective private remedy." *Slaney* v. *Westwood Auto, Inc.*, *supra* at 699-700. Recognizing that "causes for which advocates cannot be obtained are, in effect, not adjudicable," *id.* at 699, quoting Eovaldi, Justice for Consumers: The Mechanisms of Redress, 66 Nw. U.L. Rev. 281, 286 (1971), the 1969 amendments to G. L. c. 93A included provisions for a minimum recovery, attorney's fees, treble damages in certain cases, and most relevant to this case, class actions.[27] *Slaney* v. *Westwood Auto, Inc.*, *supra* at 699-700. In other words, because the need for class actions for c. 93A claims had been "most persuasively demonstrated," Rice, New Private Remedies for Consumers: The Amend-

---

[27]Three years later, the Legislature enacted G. L. c. 93A, § 11, which included a class action provision for business plaintiffs. St. 1972, c. 614, § 2.

ment of Chapter 93A, 54 Mass. L.Q. 307, 315 (1969),[28] the pur-
pose of amending the statute was to "provide an effective private
consumer remedy" by overcoming the hurdle of "economic lim-
itations to the litigation of an otherwise valid claim." *Id.* at 307.
Permitting consumers to sue as a class cured the defect inherent
in the consumer protection statute that no matter how egregiously
a consumer might have been wronged, "the economics of a litiga-
tion designed to seek redress precluded an effective attack." *Id.*

The right to a class action in a consumer protection case is of
particular importance where, as here, aggregation of small claims
is likely the only realistic option for pursuing a claim. See *Leardi*
v. *Brown*, 394 Mass. 151, 164 (1985), quoting Rice, *supra* at 316
("one of the basic purposes" of G. L. c. 93A was to provide "a
device for vindicating claims which, taken individually, are too
small to justify legal action but which are of significant size if
taken as a group"). See also *Amchem Prods., Inc.* v. *Windsor*,
521 U.S. 591, 617 (1997), quoting *Mace* v. *Van Ru Credit Corp.*,
109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core
of the class action mechanism is to overcome the problem that
small recoveries do not provide the incentive for any individual
to bring a solo action prosecuting his or her rights. A class action
solves this problem by aggregating the relatively paltry potential
recoveries into something worth someone's [usually an attorney's]
labor"). Dell's class action prohibition undermines this policy
and, in so doing, defeats "the presumption" that arbitration pro-
vides "a fair and adequate mechanism for enforcing statutory
rights." *Kristian* v. *Comcast Corp.*, 446 F.3d 25, 54 (1st Cir.
2006), quoting *Rosenberg* v. *Merrill Lynch, Pierce, Fenner &
Smith, Inc.*, 170 F.3d 1, 14 (1st Cir. 1999). See *Kristian* v. *Com-
cast Corp.*, *supra* at 54-55, quoting Gilles, Opting out of Li-
ability: The Forthcoming, Near-Total Demise of the Modern
Class Action, 104 Mich. L. Rev. 373, 407 (2005) ("The class
mechanism ban — 'particularly its implicit ban on spreading
across multiple plaintiffs the costs of experts, depositions, neu-
trals' fees, and other disbursements' — forces the putative class
member 'to assume financial burdens so prohibitive as to deter

---

[28]The author, David A. Rice, was the principal draftsman of the 1969
amendments to G. L. c. 93A. See *Slaney* v. *Westwood Auto, Inc.*, 366 Mass.
688, 698 n.13 (1975).

the bringing of claims' "); *Carnegie* v. *Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30"); *State ex rel. Dunlap* v. *Berger*, 211 W. Va. 549, 562 (2002), cert. denied sub nom. *Freidman's Inc.* v. *West Va. ex rel. Dunlap*, 537 U.S. 1087 (2002) (class action remedies are effective at addressing "small-dollar/high volume" illegality; "[i]n many cases, the availability of class action relief is a sine qua non to permit the adequate vindication of consumer rights").

Permitting Dell to prohibit class actions against it through its contracts with its customers would be counter to our public policy for two additional reasons. First, it undermines the public interest in deterring wrongdoing. See *Salvas* v. *Wal-Mart Stores, Inc.*, 452 Mass. 337, 371-372 (2008), quoting 2 A. Conte & H.B. Newberg, Class Actions § 4.36, at 314 (4th ed. 2002) ("Class actions were designed not only to compensate victimized group members, but also to deter violations of the law, especially when small individual claims are involved"); *In re Am. Express Merchants' Litig.*, 554 F.3d 300, 320 (2d Cir. 2009) (allowing enforcement of class action waiver in credit card acceptance agreement would grant corporation "de facto immunity from antitrust liability by removing the plaintiffs' only reasonably feasible means of recovery"); *Dale* v. *Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir. 2007) ("Corporations should not be permitted to use class action waivers as a means to exculpate themselves from liability for small-value claims"). Second, the loss of an individual consumer's right to bring a class action negatively affects the rights of those unnamed class members on whose behalf the class action would proceed. In this sense, the right to participate in a class action under G. L. c. 93A is a public — not merely a private — right: it protects the rights of consumers as a whole. See *Muhammad* v. *County Bank*, 189 N.J. 1, 20 (2006) ("without the availability of a class-action mechanism, many consumer-fraud victims may never realize that they may have been wronged").

The defendants argue that Feeney and Dedham Health have not made a sufficient showing that the class action mechanism is necessary for them to obtain relief for their statutory rights under G. L. c. 93A. They point out, with some force, that there

is here no attempt to displace a statutory scheme, as was the case in *Beacon Hill Civic Ass'n* v. *Ristorante Toscano, Inc.*, 422 Mass. 318, 321-323 (1996). The argument is nevertheless unavailing. The claimed damages here are small (Feeney claims damages of $13.65, and Dedham Health claims damages of $215.55), and we need not engage "in an exhaustive analysis" to determine that the costs of bringing such claims are "prohibitive."[29] *Fiser* v. *Dell Computer Corp.*, 144 N.M. 464, 469 (2008). It is sufficient that the plaintiffs' claims are of a class of disputes that "predictably involve small amounts of damages." *Discover Bank* v. *Superior Court*, 36 Cal. 4th 148, 162 (2005). The defendants' argument that the statutory availability of attorney's fees, damages, and multiple damages to a prevailing plaintiff under G. L. c. 93A would "enable the plaintiffs to vindicate valid claims without a class action" is unpersuasive; these statutory provisions are not sufficient to ensure that a consumer or business with a small-value claim will be able to find an attorney willing to take the case absent the ability to aggregate claims. See *Gentry* v. *Superior Court*, 42 Cal. 4th 443, 464 (2007), quoting *Discover Bank* v. *Superior Court*, *supra* at 162 (rejecting "unsupported assertions" of some courts that, "in the case of small individual recovery, attorney fees are an adequate substitute" for class actions); *Muhammad* v. *County Bank*, *supra* at 21 (where damages sought by plaintiff and those she seeks to represent are small, "availability of attorney's fees is illusory if it is unlikely that counsel would be willing to undertake the representation"). This is the import of the Legislature's 1969 amendment of G. L. c. 93A to provide for class actions in addition to statutory damages and attorney's fees. Finally, as the legislative history of G. L. c. 93A makes clear, the availability of the Attorney General's enforcement authority is also not sufficient to ensure that the goals of the statute are realized.[30] Cf. *Kristian* v. *Comcast Corp.*, *supra* at 59 ("When Congress enacts a statute that

---

[29]It is therefore not dispositive whether, as the defendants claim, the plaintiffs did not present the motion judge in the Superior Court with proof that their claims were not individually viable.

[30]In its amicus brief, the Commonwealth states that, because "[t]he need to supplement public enforcement measures with private consumer actions has not diminished," it "cannot pursue all meritorious and worthwhile claims of Massachusetts consumers."

provides for both private and administrative enforcement actions, Congress envisions a role for both types of enforcement").

We decline to enforce a prohibition on class actions in a consumer contract where to do so would in effect sanction a waiver of the right to proceed in a class action under G. L. c. 93A. Allowing companies that do business in Massachusetts, with its strong commitment to consumer protection legislation, to insulate themselves from small value consumer claims creates the potential for countless customers to be without an effective method to vindicate their statutory rights, a result clearly at odds with our public policy.

The defendants' argument that a class action prohibition is not contrary to "any Massachusetts policy" because such a prohibition is "inherent" in an agreement to arbitrate is misplaced. First, the argument's premise, that arbitration and class actions are incompatible, is undermined by the reality — which defendants acknowledge — that class arbitrations do in fact occur. See *In re Am. Express Merchants' Litig., supra* at 310 n.7, quoting Clancy, An Uninvited Guest: Class Arbitration and the Federal Arbitration Act's Legislative History, 63 Bus. Law. 55, 56 (2007) ("It is apparent that '[c]lass arbitration is a swiftly growing phenomenon' "); *McKee* v. *AT&T Corp.,* 164 Wash. 2d 372, 395 (2008) ("Class actions are often arbitrated"). Moreover, a majority of the Justices of the United States Supreme Court has, at least implicitly, indorsed class arbitrations as consistent with the FAA. See *Shroyer* v. *New Cingular Wireless Servs., Inc.,* 498 F.3d 976, 992 (9th Cir. 2007), citing *Green Tree Fin. Corp.* v. *Bazzle,* 539 U.S. 444, 454 (2003). Second, the defendants' claim that "[c]lass proceedings in arbitration are highly problematic" is the sort of "singling out" of arbitration for "suspect status" that the United States Supreme Court has rejected. *Doctor's Assocs., Inc.* v. *Casarotto,* 517 U.S. 681, 687 (1996). See *Discover Bank* v. *Superior Court, supra* at 167, quoting *Armendariz* v. *Foundation Health Psychcare Servs., Inc.,* 24 Cal. 4th 83, 120 (2000) (lower court's "conclusion regarding the unsuitability of arbitration to class actions reflects . . . 'the very mistrust of arbitration that has been repudiated by the United States Supreme Court' ").

Our decision is not based on any judgment about the merits of a particular forum for class action adjudication — arbitration

or litigation — but rather on a determination that in the circumstances of a case such as this (small value claims sought under our consumer protection statute, G. L. c. 93A), a clause effectively prohibiting class proceedings in any forum violates the public policy of the Commonwealth.

5. *Choice of law.* Dell's terms include a provision specifying that Texas law applies to "[t]his agreement and any sales thereunder . . . ." Because Texas law would appear to allow a prohibition on class actions, see *AutoNation USA Corp.* v. *Leroy*, 105 S.W.3d 190, 199-200 (Tex. Ct. App. 2003), we must decide whether Texas or Massachusetts law applies.

Where State policies differ, "we look to our established 'functional' choice of law principles and to the Restatement (Second) of Conflict of Laws,. with which those principles generally are in accord." *Hodas* v. *Morin*, 442 Mass. 544, 549 (2004), quoting *Bushkin Assocs., Inc.* v. *Raytheon Co.*, 393 Mass. 622, 631-632 (1985). Where parties have specifically expressed an intent as to the governing law, we respect that intent unless the result would be contrary to our public policy. *Hodas* v. *Morin, supra* at 549-550, quoting *Steranko* v. *Inforex, Inc.*, 5 Mass. App. Ct. 253, 260 (1977). See *Jacobson* v. *Mailboxes Etc. U.S.A., Inc.*, 419 Mass. 572, 575 (1995) (applying law of State designated in contract "in the absence of any substantial Massachusetts public policy reason to the contrary"). Applying the "two-tiered analysis" of the Restatement (Second) of Conflicts of Laws § 187 (1971), *Hodas* v. *Morin, supra* at 550, we inquire first whether the State chosen by the parties has a "substantial relationship" to the transaction and, second, whether " 'application of the law of the chosen state [here, Texas] would be contrary to a fundamental policy of a state [here, Massachusetts] which has a materially greater interest than the chosen state' and is the State whose law would apply . . . 'in the absence of an effective choice of law by the parties.' " *Id.*, quoting Restatement (Second) of Conflicts of Laws, *supra.*

The plaintiffs do not contest that the chosen State, Texas, has a "substantial relationship" to the transaction.[31] Nor does either party contest that, as the forum State, Massachusetts law would

---

[31]Dell Computer, Dell Catalog, Dell Marketing, and BancTec were each headquartered in Texas when the complaint was filed.

apply were the choice of law provision in the terms deemed ineffective. Our inquiry is therefore limited to whether the application of Texas law would lead to a result contrary to a "fundamental policy" of Massachusetts and, if so, whether Massachusetts has a "materially greater interest" than Texas.[32]

We have no trouble concluding that the strong public policy in favor of class actions for small value claims under G. L. c. 93A is a "fundamental policy" contemplated by § 187 of the Restatement (Second) of Conflict of Laws. See *Fiser* v. *Dell Computer Corp.*, 144 N.M. 464, 468 (2008) (fundamental New Mexico policy to ensure that consumers have "an opportunity to redress their harm"); *McKee* v. *AT&T Corp.*, *supra* at 386 ("Washington's strong Consumer Protection Act policy favoring class adjudication of small-dollar claims is a 'fundamental policy' "). See also Restatement (Second) of Conflict of Laws, *supra* at § 187 comment g ("The forum will apply its own legal principles in determining whether a given policy is a fundamental one within the meaning of the present rule and whether the other state has a materially greater interest"; "a fundamental policy may be embodied in a statute . . . which is designed to protect a person against the oppressive use of superior bargaining power"). We likewise have little trouble concluding that the interest embodied in this policy — the protection of large classes of consumers and the deterring of corporate wrongdoing — is materially greater than Texas's interest, which the defendants identify as "minimizing its companies' legal expense." See *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. 369, 378 (1990) ("we ordinarily would not effectuate a *consumer's* waiver of rights under c. 93A," [emphasis in original]); *Spence* v. *Reeder*, 382 Mass. 398, 413 (1981) ("courts have long refused to give effect to purported waivers of statutory rights where enforcement of the particular waiver would do violence to the public policy underlying the legislative enactment"). See also *Homa* v. *American Express Co.*, 558 F.3d 225, 232-233 (3d Cir. 2009) (concluding that Supreme Court of New Jersey would apply New Jersey

---

[32]The defendants' contention that the plaintiffs have waived the "materially greater interest" point lacks merit. While the plaintiffs may not have specifically used the "materially greater interest" language, that point is subsumed with their argument that "the fundamental public policy favoring class actions for Chapter 93A claims in Massachusetts would prevail over Texas law."

law to class-arbitration waiver in "small-sum" case despite choice-of-law provision favoring Utah; although Utah statute expressly allowing class action waivers in consumer credit agreements indicated that Utah had "a strong policy in favor of the enforcement of the waivers," New Jersey has "a materially greater interest than Utah in the enforceability of a class-arbitration waiver that could operate to preclude a New Jersey consumer from relief under the [New Jersey Consumer Fraud Act]"); Brazil vs. Dell Inc., No. C-07-01700 RMW (N.D. Cal., Aug. 3, 2007) (declining to enforce Texas choice-of-law provision in Dell consumer agreement; California's interest in protecting its citizens from "take it or leave it" agreements that incorporate one-sided protections outweighed Texas's interest in "protecting its resident business's expectations of consistent legal standards"); McKee v. AT&T Corp., supra ("Washington's interest in protecting large classes of its consumers materially outweighs New York's limited interest"). Because Texas law likely would result in the enforcement of the class action prohibition, leaving Massachusetts consumers and businesses with small claims without an effective remedy, enforcing the choice-of-law provision would lead to a result contrary to our fundamental policy. For this reason, Massachusetts law applies, and Dell's class action prohibition is unenforceable.

6. *Federal preemption.* The defendants argue that, even if Massachusetts rather than Texas law applies, the FAA preempts any defense based on State public policy.[33] We disagree. The FAA, which was designed to "place arbitration agreements 'upon the same footing as other contracts,' " *Scherk* v. *Alberto-Culver Co.*, 417 U.S. 506, 511 (1974), quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924), provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration agreements are therefore meant to be "as enforceable as other contracts, *but not more so*" (emphasis in original). *Opals on Ice Lingerie* v. *Body Lines,*

---

[33]The Federal Arbitration Act (FAA) applies to maritime transactions and to transactions involving interstate commerce. See 9 U.S.C. §§ 1 & 2. As the products purchased in this case were shipped to Massachusetts from either Tennessee or Texas, there is no dispute that the transactions involved interstate commerce.

*Inc.*, 320 F.3d 362, 369 (2d Cir. 2003), quoting *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967). For this reason, a court may apply generally applicable State law contract defenses to determine the validity of an arbitration agreement, *St. Fleur* v. *WPI Cable Sys./Mutron*, 450 Mass. 345, 350 (2008), and may invalidate an arbitration agreement on such grounds without contravening the FAA. *Doctor's Assocs., Inc.* v. *Casarotto*, 517 U.S. 681, 687 (1996).

Because the tenet that a contract may be invalidated on grounds that it violates public policy is a principle of State contract law that "arose to govern issues concerning the validity, revocability, and enforceability of contracts generally," see *Perry* v. *Thomas*, 482 U.S. 483, 492-493 n.9 (1987), our conclusion that the class action prohibition is unenforceable on those grounds is not preempted by the FAA. See *Shroyer* v. *New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 990 (9th Cir. 2007), quoting *Kinkel* v. *Cingular Wireless LLC*, 223 Ill. 2d 1, 19 (2006) (FAA "does not require state courts, when applying state law to a question of the enforceability of a particular contract, to necessarily reach an outcome that encourages individual arbitration"); *Kinkel* v. *Cingular Wireless LLC, supra* at 20 ("the FAA neither expressly nor impliedly preempts a state court from holding that an arbitration clause or a specific provision within an arbitration clause is unenforceable; it merely frames the issue by requiring that a state court examine the disputed provision in the same manner that it would examine any contract").

While the defendants are correct that the FAA prohibits courts from "singling out arbitration provisions for suspect status," quoting *Doctor's Assocs., Inc.* v. *Casarotto, supra* at 687, our conclusion does not selectively target arbitration. The problem inherent in Dell's terms is not that they compel arbitration but that, by mandating individual arbitration, they compel a procedure for resolving claims that effectively eviscerates the c. 93A right to participate in a class action. See *Leardi* v. *Brown*, 394 Mass. 151, 164 (1985). Simply put, a prohibition on class actions "has nothing to do with a valid agreement to arbitrate." *McKee* v. *AT&T Corp., supra* at 395. It is the effective ban on class actions — not the mandating of arbitration — that is repugnant to the public policy of the Commonwealth. Our decision is not, as the defend-

ants argue, "tantamount to a policy against arbitration," but rather the logical corollary of our fundamental public policy in favor of preserving the ability of consumers and businesses to vindicate their rights under G. L. c. 93A. See *Lowden* v. *T-Mobile USA, Inc.*, 512 F.3d 1213, 1221 (9th Cir. 2008) (FAA does not preempt Washington State law from rendering unconscionable arbitration provision containing class action prohibition because State law principles "apply equally to a contract that permits only individual, not aggregate, litigation in court"); *Gentry* v. *Superior Court*, 42 Cal. 4th 443, 465 (2007) ("The principle that in the case of certain unwaivable statutory rights, class action waivers are forbidden when class actions would be the most effective practical means of vindicating those rights is an arbitration-neutral rule: it applies to class waivers in arbitration and nonarbitration provisions alike").

7. *Severability.* The contracts at issue here do not contain a severability or savings clause. We agree with the Supreme Court of New Mexico, which held that a similar class action waiver was not severable because the class action bar was "part of the arbitration provision" and "central to the mechanism for resolving the dispute between the parties." *Fiser* v. *Dell Computer Corp.*, 144 N.M. 464, 471 (2008). Cf. *Kristian* v. *Comcast Corp.*, 446 F.3d 25, 62 (1st Cir. 2006) (concluding that class arbitration bar was severable where arbitration agreement contained savings clause, but noting that courts typically prefer "declaring an arbitration agreement unenforceable rather than using severance as a remedy when fundamental elements of the arbitration regime are at issue," and that severing class arbitration bar would be "difficult to justify" absent savings clause).[34] The defendants argue, correctly, that the absence of a severability or savings clause does not, by itself, necessarily mean that the class waiver is "insever-

---

[34]In their response to the plaintiffs' claim of arbitration, the defendants argued to the arbitrator that the plaintiffs could not arbitrate as a class because the National Arbitration Forum Code of Procedure — which, according to Dell's terms, governs the dispute between the parties — does not provide for class action arbitration absent the consent of all parties — and the defendants did not so consent. Where the possibility for class arbitration is thus apparently foreclosed, severing the ban on class actions but leaving the arbitration clause intact would appear to lead to the same result, elimination of the statutory right to proceed on a class basis, which we have determined is contrary to our public policy.

able." Our decision in this regard does not rest solely on the absence of such a clause.

8. *Failure to state a claim.* The defendants argue that, even if arbitration should not have been compelled, the complaint should be dismissed for failure to state a claim on which relief can be granted. Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). Specifically, they claim that the plaintiffs' allegation that Dell erroneously collected sales tax attributable to the purchase of computer service contracts falls outside "the conduct of trade or commerce" as those terms are used in G. L. c. 93A, § 2 (*a*). The defendants did not move for dismissal on this basis in the trial court. However, as the prevailing party, they are "entitled to argue on appeal that the judge was right for the wrong reason, even relying on a principle of law not argued below." *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 734-735 (1992). Moreover, we may consider any ground apparent on the record that supports the result reached in the trial court. *Gabbidon* v. *King*, 414 Mass. 685, 686 (1993), citing *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, *supra*; *St. Germaine* v. *Pendergast*, 411 Mass. 615, 619 n.9 (1992); *North Shore Corp.* v. *Selectmen of Topsfield*, 322 Mass. 413, 416 (1948); and *Rosenfeld* v. *Board of Health of Chilmark*, 27 Mass. App. Ct. 621, 626 n.10 (1989). Here, the result reached by the judge in the Superior Court was a dismissal of the plaintiffs' lawsuit. Looking, as we must, to the allegations of the complaint, we may determine whether the plaintiffs have failed to state a claim. See, e.g., *Eigerman* v. *Putnam Invs., Inc.*, 450 Mass. 281, 285 n.6 (2007) ("The only facts appropriate for consideration in deciding a motion to dismiss are, as has been noted, those drawn from factual allegations contained within the complaint or within attached exhibits"). Cf. *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, *supra* at 735 (we "cannot" accept "new" argument on appeal that "depends on facts not established in the record"). If the allegations are insufficient, the complaint fails and must be dismissed.

The defendants argue that the plaintiffs fail to state a claim for two reasons. First, the defendants assert that G. L. c. 93A does not apply "by its terms." Second, they urge us to hold that the application of G. L. c. 93A "would improperly displace the tax code." We agree with the defendants on the first point, and we therefore need not reach the second.

General Laws c. 93A prohibits "unfair or deceptive practices in the conduct of any trade or commerce." G. L. c. 93A, § 2 (*a*). "Trade or commerce" refers to transactions in a "business context," *Lantner* v. *Carson*, 374 Mass. 606, 611 (1978), which, in turn, is "determined by the facts of each case," on consideration of "the nature of the transaction, the character of the parties and their activities, and whether the transaction was motivated by business or personal reasons." *Poznik* v. *Massachusetts Med. Professional Ins. Ass'n*, 417 Mass. 48, 52 (1994), quoting *All Seasons Servs., Inc.* v. *Commissioner of Health & Hosps. of Boston*, 416 Mass. 269, 271 (1993). Where a party's actions are motivated by "legislative mandate, not business or personal reasons," this court has "repeatedly held that c. 93A does not apply." *Lafayette Place Assocs.* v. *Boston Redevelopment Auth.*, 427 Mass. 509, 535 (1998), quoting *Peabody N.E., Inc.* v. *Marshfield*, 426 Mass. 436, 439-440 (1998). See *Poznik* v. *Massachusetts Med. Professional Ins. Ass'n*, supra; *Barrett* v. *Massachusetts Insurers Insolvency Fund*, 412 Mass. 774, 777 (1992).

Although the plaintiffs claim that no tax was due on the optional service contracts under any State statute, they do not allege — nor do they argue here — that Dell did not remit the tax it collected to the Commonwealth.[35] For this reason, their argument that Dell's "for-profit sales of computer hardware and optional service contracts" were "by definition" in a business context misses the mark. There is no dispute that Dell's sales to the plaintiffs occurred in a business context. But the issue here is more textured: the plaintiffs' claim is based not on the transactions as a whole, but on a particular component of the transactions, the allegedly improper collection of sales tax in connection with the sales of the computer service contracts. See G. L. c. 64H, § 5 ("amount of [sales] tax collected by the vendor from the purchaser shall be stated and charged separately from the sales

---

[35]General Laws c. 64H, § 2, imposes a sales tax and provides that such tax "shall be paid by the vendor to the commissioner [of revenue]," while G. L. c. 64H, § 3 (*a*), in turn provides that "reimbursement for the tax hereby imposed shall be paid by the purchaser to the vendor, and each vendor in the commonwealth shall add to the sales price and shall collect from the purchaser the full amount of the tax imposed by this chapter." See G. L. c. 64H, § 23 (prohibiting vendors from advertising that they will assume or absorb sales tax).

price and shown separately on any record thereof"). Even if, as the plaintiffs allege, Dell was not properly charging and collecting the taxes because optional service contracts are not subject to such tax,[36] that Dell remitted the proceeds from the tax collected to the Commonwealth — rather than retaining them for its own enrichment — compels a conclusion on the record here that Dell's collection of such tax was not motivated by "business or personal reasons" but was pursuant to legislative mandate.[37] See *Household Retail Servs., Inc.* v. *Commissioner of Revenue*, 448 Mass. 226, 230 (2007) (vendors who, "on behalf of the Commonwealth, compute, collect, and file sales tax returns, and remit full sales tax for each customer transaction" serve as "trustees for the Commonwealth's retail sales taxes"); *Poznik* v. *Massachusetts Med. Professional Ins. Ass'n, supra* at 53 ("Chapter 93A imposes liability on persons seeking to profit from unfair practices"). Considering, as we must, only the allegations of the complaint, the plaintiffs have not alleged facts sufficient to make out a claim under G. L. c. 93A. See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 633 (2008).

It is the case that the plaintiffs have variously implied (without alleging any such facts) that, notwithstanding the defendants' remittance of taxes to the Commonwealth, profit might be the motive behind the defendants' collection of the tax on the sale of its optional service contracts. In their "statement of facts" in their initial brief to this court, the plaintiffs suggest that the defendants collected tax in connection with the sales of service contracts as part of an attempt to transfer the tax burden on repair *parts* for

---

[36]The basis of the plaintiffs' claim is a two-step analysis: (1) that only tangible personal property and telecommunications services are subject to sales or use tax in the Commonwealth, citing G. L. c. 64H, § 2, and G. L. c. 64I, § 2; and (2) that the optional service contracts sold by Dell are neither tangible property nor telecommunication services and therefore not subject to a sales or use tax. For their part, the defendants maintain that their collection of sales tax on optional service contracts was in line with guidance Dell had received from the Department of Revenue.

[37]Of course, if a retailer deceptively collects a charge that the retailer terms a "sales tax" and keeps the proceeds of the "tax" for the retailer's own enrichment rather than remit them to the Commonwealth, a different result would obtain. In such a circumstance, the collection of the "tax" would be motivated by business reasons, not by a legislative mandate, and would constitute a "deceptive practice" under G. L. c. 93A. There is no such allegation here.

Dell hardware from the repairer, whether Dell or BancTec, to the customer. If true,[38] such an allegation could conceivably state a claim under G. L. c. 93A, to the extent that it demonstrated a profit-seeking motive for the collection of the tax. Where, as here, the plaintiffs made no such allegation in their complaint, dismissal is warranted.[39] In these circumstances, however, "we think it appropriate to give the plaintiffs the opportunity to file an amended complaint." *Iannacchino* v. *Ford Motor Co.*, *supra* at 635. Accordingly, on remand, the complaint is to be dismissed without prejudice.

9. *Conclusion.* For the foregoing reasons, we conclude that the arbitration clause is unenforceable but that plaintiffs failed to state a claim under G. L. c. 93A. The decision of the judge in the Superior Court compelling arbitration is reversed. On remand, the case is to be dismissed without prejudice.

*So ordered.*

---

[38]The defendants vigorously challenge any such implication, maintaining that their decisions regarding the taxability of service contracts had "nothing to do with any potential use tax liability on repair parts." The arbitrator ruled in favor of the defendants on this issue, stating, "I find no credible evidence to suggest that Dell and BancTec conspired to avoid the payment of use tax on parts by charging consumers, including [the plaintiffs], sales tax on optional service contracts."

[39]The second amended complaint characterizes as "unfair or deceptive" the collection of a "purported 'tax' on the purchase of optional extended warranty service contracts," but contains no allegation concerning any conspiracy on Dell's part to shift the burden of taxes for repair *parts* to the customers. In their reply brief responding to the defendants' argument that G. L. c. 93A does not apply to the collection of sales tax, the plaintiffs' argument is brief; they dismiss the defendants' argument on this point as a "MacGuffin," and claim merely that defendants charged more " 'tax' than is lawfully due." The reply brief makes no mention of the profit-seeking scheme suggested by the plaintiffs in the fact section of their initial brief.