SUPERIOR COURT 
 
 MICHAEL BOSWORTH vs. NATIONSTAR MORTGAGE, LLC d/b/a MR. COOPER

 
 Docket:
 2079CV00276
 
 
 Dates:
 March 3, 2025
 
 
 Present:
 Deepika B. Shukla
 
 
 County:
 HAMPDEN
 

 
 Keywords:
 FINDINGS OF FACT, RULINGS OF LAW, AND ORDER OF JUDGMENT
 
 

             Plaintiff Michael Bosworth ("Mr. Bosworth" .or "Plaintiff") has brought a civil action for  unjust  enrichment  and  unfair  and  deceptive  acts or  practices,  in violation of
G.L. c. 93A, against Nationstar Mortgage, LLC d/b/a Mr. Cooper ("Mr. Cooper" or "Defendant'')., based on Mr. Cooper's $20 Third Party Reconveyance Preparation Fee (the "Fee") assessed to Mr. Bosworth when he paid off his mortgage. The Court held a jury- waived trial on December 2, 2024. Mr. Bosworth testified for Plaintiff, and Courtney Ehinger of Mr. Cooper testified for Defendant. The parties introduced twenty  exhibits. On December 10, 2024, the parties submitted  post-trial briefs.  Upon consideration  of the credible testimony of the witnesses, the·exhibits, and the memoranda and oral arguments of  counsel, the Court makes the following findings of fact and rulings of law and orders a JUDGMENT for Plaintiff on both claims.
 
                                                            -1-
 
FINDINGS  OF FACT
            The Court finds the following facts and reserves some details for the legal discussion. On January 31, 2019, Mr. Bosworth and his wife purchased a home in Wilbraham, Massachusetts (the "Property"). The same day, to fund the purchase, Mr. Bosworth obtained a loan from Mortgage Network, Inc. in the original principal amount of $354,989.00 (the "Loan") and executed a promissory note (the "Note") in the same amount. The Note was secured by a thirty-year mortgage (the "Mortgage") on the Property granted by Mr. Bosworth and his .wife to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Mortgage Network, Inc., and its successors and assigns, dated January 31, 2019, and recorded with the Hampden County Registry of Deeds ("Registry") in Book 22542, Page 566. Mr. Cooper was not a party to the Note or Mortgage.
            Pursuant to the Mortgage, Mr. Bosworth agreed that the Mortgage secured to the Lender, Mortgage Network, Inc.: "(I) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this [Mortgage] and the Note." Ex. 3 at 3.
            At the crux of this controversy is Paragraph 23 of the Mortgage, entitled Release, which provides:
Upon payment of  all sums secured  by this Security Instrument, Lender shall .discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services
 
                                                            -2-
 
rendered and the charging of the fee is permitted under Applicable Law.
Ex. 3 at 12, ¶ 23. The Mortgage does not explicitly reference a Third Party Reconveyance Preparation Fee or state the amount of or limit upon any fee for releasing the Mortgage. 
            On February 19, 2019, the Loan was securitized, and Federal Home Mortgage Loan Corporation became the investor for the Loan and the owner of the  Note. At that time, Mr. Cooper became the loan servicer and serviced the loan from February 19, 2019, through February 10, 2020, when Mr. Bosworth paid off the loan. During this time frame, Mr. Bosworth made the Loan payments to Mr. Cooper. At no time did Mr. Cooper own the Note.
            On February 22, 2019, Mr. Cooper sent Mr. Bosworth a letter entitled "Notice of Servicing Transfer." Ex. 6. The letter notified Mr. Bosworth that the Mortgage's servicing had been transferred  to Mr. _Cooper and that as of February 19, 2019, Mr. Cooper would be collecting Mr. Bosworth's Loan payments. Mr. Bosworth had no input, nor was he ever consulted, regarding the transfer' of servicing to Mr. Cooper.
            Also on February 22, 2019, Mr. Cooper sent Mr. Bosworth his first Loan bill. The second page of the bill contained a section of small print entitled '1mportant Payment Information," which stated, among other things:
•           Any lump sum received that is not accompanied by a payoff quote will be applied according to our standard payment application rules. This will not result in satisfaction and reconveyance/release unless amount tendered satisfies all amounts due and owing on the account.
 
                                                            -3-
 
• A       Schedule of Fees for Select Services may be found on our website at www.mrcooper.com.
Ex. 7 at 2. Mr. Cooper's website included a document that listed five pages of "Mortgage Related Fees and Costs." Ex. 20. At the bottom of the first page was a "Third Party Reconveyance/Release Preparation Fee," described as "Fee charged at payoff for expenses  related  to releasing  the lien or  reconveying  the Property."  Ex. 20  at 1.   The 11 Amount Charged" was listed as "Up to $20." Ex. 20 at 1.
            At Mr. Bosworth's request, Mr. Cooper issued payoff statements to him through his counsel on _January 6, 2020, and February 4, 2020. The February 4, 2020 payoff statement included the following items under a section entitled "Payoff Breakdown":
Current Unpaid Principal Balance:                             $351,201.74
Interest- from 12/1/19 to 2/13/20                                $4,029.59
Late Fees                                                                     $62.15
Escrow Advances                                                       $507.95
County Recording Fee                                                $105.00
Third Party Reconveyance Preparation Fee               $20.00
TOTAL PAYOFF AMOUNT                                    $355,926.43
Ex. 4. Both the January and February 2020 payoff statements included the Fee but no explanation of what the Fee was, beyond the title. The February 2020 payoff statement included a page of "Frequently Asked Questions" that included nothing illuminating the purpose of the Fee. The Frequently Asked Questions included the following information, suggesting the payment of the Fee was required to release the Mortgage:
What happens if I send in the wrong payoff amount?
 
                                                            -4-
 
If your payment is short and  you  have  an  escrow  account  that  will  cover the difference, then we will apply those  funds  toward  the  payoff.  If  you don't have an escrow account or the balance is not enough, then we  will attempt to contact the sending source  to  satisfy  the  payoff.  Please note, if this fails after the payoff date deadline or we cannot contact  the  sending source, then a refund of the  total  payment  amount  will  be  issued  back  to the original source. For this reason, we encourage you to pay the amount that is stated on your payoff quote.
            . . . . 
How will I know that the payoff is complete and final?
Upon processing of payment in full, and  within State specified  guidelines, the necessary documents will be forwarded to the Trustee and/or County Recorder's Office to release our lien....
Ex. 4 (emphasis added).
            Mr. Bosworth believed that he had to pay all the items listed on the Payoff Breakdown for the Mortgage to be released from his Property. Even though he expressed concern regarding the Fee to his attorney because he did not know what it was and had not anticipated having to pay it, Mr. Bosworth reluctantly paid the total payoff amount, including the Fee, to Mr. Cooper on February 10, 2020.
            Upon receipt of Mr. Bosworth's payment, Mr. Cooper deposited the Fee into an interest-bearing operating account. On February 12, 2020, Mr. Cooper sent information related to the Loan and Mortgage to Nationwide Title Clearing, Inc. ("NTC"), a third- party vendor Mr. Cooper retained to provide certain lien release services throughout the country. Mr. Cooper asked NTC to prepare and record the Mortgage discharge.
 
                                                            -5-
 
            NTC then reviewed the records, prepared the forms for discharge in accordance with the jurisdiction of the property, signed the discharge on behalf of MERS, and  had the discharge recorded with the Registry on March 4, 2020, in Book 23112, Page 519. See Ex. 11.  On March 9, 2020, NTC sent an invoice to Mr. Cooper for the discharge  service·s that included the Fee for discharging the Mortgage. See Ex. 10. Mr. Cooper paid NTC's invoice in full on March 24, 2020. Mr. Cooper made an unspecified amount of interest on the Fee deposited in its interest-bearing account from February 10,· 2020, to March 24, 2020.
            By written contract, NTC agreed to provide residential lien release services to Mr. Cooper, including release preparation,  execution,  and  recording.  Mr.  Cooper  agreed  to pay NTC fees in accordance  with a  payment  schedule  outlined  in  the relevant "Statement of Work." Ex. 8 at 3, 'iI1._10. NTC invoiced Mr. Cooper monthly, in arrears, for fees owed that Mr. Cooper agreed to pay within 30 or 60 days of receiving each invoice. Ex. 8 at 7. The base lien release service fee in that agreement was $20; extra fees ranging up to $10 applied to additional services, such as requests for certified copies, expedited services, and confirmation of the recording of the discharge. See Ex. 9 at 13, Sched. C.
            Mr. Cooper  did  not  charge  mortgagors  the Fee for loans insured  by the Federal Housing Administration ("FHA"), loans that had been foreclosed on because of default, or loans on short sales. For the majority of the other n:1,ortgage loans it serviced, Mr. Cooper  retained  NTC  to prepare  the discharges.    Mr. Cooper  had  a Lien Release
 
                                                            -6-
 
Department that prepared mortgage discharge paperwork. Mr. Cooper did not charge mortgagors the Fee for loans when it did not retain a third-party vendor to prepare the lien discharge but instead prepared the discharge in-house. Mr. Cooper would not have charged Mr. Bosworth the Fee if Mr. Cooper had done the mortgage discharge preparation and recording work in connection wi the Mortgage.
RULINGS  OF LAW
            Before deciding whether Mr. Bosworth has satisfied his burden of proving that  Mr. Cooper violated G.L. c. 93A and was unjustly enriched, the Court must first determine whether the terms of the Mortgage allowed Mr. Cooper's charging and collecting of the Fee.
I.          The Fee
            At  issue  is  Paragraph  23 of  the  Mortgage,  which  states:  "Lender  may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law." Ex: 3. The Fee was justified if: (1) the Fee was paid to a third party for services rendered - and the Court finds that it was: (2) Mr. Cooper could and did step in the shoes of  the "Lender" as referenced in  Paragraph 23 for purposes of charging the Fee -  and the Court  finds  and rules  that  it  could  and   did:  and  (3)  the  Fee  was  ·permitted under applicable law - and the Court finds and rules that it was not. Therefore, Mr. Bosworth 
 
                                                            -7-
 
has satisfied his burden of showing that Mr. Cooper improperly charged and collected the Fee.
                        A.        Payment to Third Party for Services Rendered
            Mr. Bosworth first argues that Mr. Cooper did not actually use the $20 generated from the Fee to perform services to discharge the Mortgage, but instead that Mr. Cooper retained it to cover other business expenses. Ehinger credibly testified that once Mr. Cooper received Mr. Bosworth's payment of the Fee, Mr. Cooper notified NTC to prepare the discharge. NTC then reviewed the records, prepared the forms for discharge in accordance with the Property's jurisdiction, signed the discharge on behalf of MERS, and recorded the discharge. NTC billed Mr. Cooper $20 for the services it performed to discharge the Mortgage on the Property, and Mr. Cooper paid NTC's bill. Therefore, Mr. Cooper properly used the Fee for services rendered by a third party to discharge the Mortgage.[1]
                        B.        Definition of “Lender”
            Mr. Bosworth argues that Mr. Cooper, as the loan servicer, lacked authority to charge the Fee because it was not the "Lender," as required by Paragraph 23 of the
 
--------------------------------------------
 
[1] Mr. Bosworth also maintains that Defendant's payment of the Fee to NTC was a condition precedent to Defendant charging the Fee to Mr. Bosworth. It is not necessary for the Court to determine whether Defendant had to pay NTC before assessing the Fee to Mr. Bosworth, where Mr. Bosworth challenges the charging of the Fee at all, regardless of the timing. This timing issue is not dispositive of the core question of whether Defendant could properly charge the Fee.
 
                                                            -8-
 
Mortgage. Mr. Bosworth does not dispute that Mr. Cooper acquired the right to service the loan. Ehinger credibly testified that Mr. Cooper, as servicer, undertook many actions to protect and preserve the Lender's interest in the property in the event of default, abandonment by the borrower, and other circumstances, despite  the  Mortgage authorizing the Lender to take those actions. The evidence and case law support an inference that mortgage servicers, in issuing payoff statements and taking actions to protect lenders' interests, act as agents of lenders and stand in their shoes. ·see Khan v. Wells Fargo Bank, N.A., Civ. A. H-12-1116, 2014 WL 794193, at *2 (S.D. Tx. 2014) (mortgage servicer "stood in the shoes of the lender" and was authorized to enforce lender's rights under mortgage and note); Costello v. Ocwen Loan Servicing, LLC, No. 17-80885-CIV 2018 WL 11368402, at *5 (S.D. Fla. 2018) ("Although generally only parties to a contract may enforce its provisions, an exception to this rule exists for agents of a party  to a contract for actions taken within the scope of their agency relationship") (internal quotations omitted); Charles v. Deutsche Bank National Trust Co., Case No. 1:15-cv-21826, 2016 WL 950968, at *3-4 (S.D. Fla. 2016) (mortgage servicer, as agent of mortgage owner and as party who issued payoff statement in course of agency relationship and who could perform inspections under mortgage, could enforce other provisions of mortgage). Cf Eaton v. Federal National Mortgage Assoc'n, 462 Mass. 569, 571 (2012) ("mortgagee" includes persons who are acting on behalf of note holder in foreclosures); 209 Code Mass.
 
                                                            -9-
 
Regs. § 56.02 (defining lender in foreclosure proceedings to include mortgage servicers or any successor in interest or assignee of mortgagee's rights under mortgage agreement). 
            Mr. Bosworth has not established that Mr. Cooper lacked authority to collect fees referenced in the Mortgage, including those in Paragraph 23. See Dawoudi v. Nationstar Mortgage LLC, 448 F.Supp.3d 918, 923-24 (N.D. Ill. 2020) (construing mortgage provisions to give servicer same rights that expressly belonged to lender under mortgage, including inspecting property and charging fees to protect property in event of default or vacancy). Insofar as Mr. Cooper, as loan servicer for the Mortgage, was authorized to fulfill the note holder's obligation to discharge the Mortgage under the terms of Paragraph 23, Mr. Cooper was also authorized to charge certain fees under the same provision.
                        C.        Permitted under Applicable Law
            The Court now turns to the question of whether "permitted under Applicable Law" in Paragraph 23 of the Mortgage means either: "expressly permitted" by applicable law - as Plaintiff argues; or "not prohibited" by applicable law - as. Defendant argues. The Court rules that Plaintiffs interpretation of the phrase is correct.
                                    1.         The Language of the Mortgage
            The interpretation of a contract is a question of law. Suffolk Construction Co. Inc. v. Lanco Scaffolding Co., 47Mass. App. Ct. 726,729 (1999). "[W]hen the language of a contract is clear, it alone determines the contract's meaning but ... a court may consider extrinsic evidence if the language is ambiguous. The determination of ambiguity in a contract is
 
                                                            -10-
 
also a question of law." Balles v. Babcock Power, Inc., 476 Mass. 565,571 (2017). Contracts that are free from ambiguity must be interpreted according to their plain terms. Suffolk Construction Co.-Inc., 47 Mass. App. Ct. at 729. The Court construes a contract as a whole in order "to give reasonable effect to each of its provisions” J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795 (1986).
The Court begins by examining the Mortgage, which defines II Applicable Law" as:
[A]ll controlling applicable federal, st te, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
Ex. 3 at 2, Definitions (I). Paragraph 16 of the Mortgage is entitled "Governing Law" and provides in relevant part:
This [Mortgage] shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this [Mortgage] are subject to any requirements and limitations of Applicable Law. Applicable law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.
Ex. 3 at 10, ¶ 16.
            Federal law expressly bars mortgage discharge fees in FHA loans, but it is silent with respect to non-FHA loans, like Mr. Bosworth's. There is no statutory, regulatory, or case law in Massachusetts expressly permitting a fee paid to a third party to prepare the paperwork and arrange for the recording of the mortgage discharge. As both parties acknowledge,  so  e states expressly bar such fees, other states expressly  authorize them, at  times  with  specific  caps  for  reasonable  fees,  and   the  laws  of   other  states,  like
 
                                                            -11-
 
Massachusetts, are silent.
            Mr. Cooper argues that the Mortgage explicitly states that silence in applicable law may not be read to mean a prohibition on the Fee. Contrary to Mr. Cooper's assertion, Paragraph 16 does not state that silence in the law equates with permission under  the · law. Instead, it states that silence in the law regarding a specific agreed-upon term should not be construed as barring an implicit agreement with respect to that term. Even if the Court reads Paragraph 16 as Mr. Cooper urges and construes Paragraph 23 as the parties agreeing that Mr. Cooper could charge a fee for releasing the  Mortgage,  that fee must still, by the plain language of Paragraph 23, be permitted under applicable law.
            The Mortgage language does not elucidate whether "permitted under applicable law" means expressly permitted or not prohibited by applicable law. The Court therefore pursues two further lines of inquiry: how courts have construed "permitted under applicable law" and similar phrases in the context of loan and mortgage fees; and how to construe contracts of adhesion with ambiguous terms.
2.         Case Law Interpreting ''Permitted Under Applicable Law'' and Similar Phrases
            The parties have each cited to only one case in the Commonwealth to support their respective positions on the meaning of "permitted under applicable law"  in  the Mortgage, but this case supports neither party's position. The Supreme Judicial Court in American  Service and Supply Co. v. Raby upheld  an attorneys'  fees award  based· on contractual language  allowing  an award  "if such are permitted  by law."   348 Mass. 720
 
                                                            -12-
 
(1965). The Supr me Judicial Court concluded that the attorneys' fees award was permitted by law, specifically by case law. See id. at 720. Therefore, American Service and Supply Co. does not lend significant support to either side, because in that case, there was law that expressly permitted the attorneys' fees award. The Court could find no other case within the Commonwealth governing the meaning of the phrase at issue.
            The Court is aware of only one case outside the Commonwealth in which a court interpreted a similar mortgage provision with respect to a mortgage discharge fee. In Washington v. Nationstar Mortgage LLC, mortgagors asserted that the mortgage discharge fees charged by a loan servicer for work done by and paid to a third party were not permitted under applicable law. No. 1:22-cv-01392, 2023 WL 5352208, *5-6 (N.D. Ohio 2023). Without analyzing or even considering definitions of the word "permitted," the Washington court concluded  that the discharge fee was  allowed because the mortgagors did  not  allege  how   the  fee  was  prohibited  by  law.    See  id.  at  *6  (dismissing without prejudice claim that mortgage servicer violated Real Estate Settlement Procedures Act based on charging plaintiff mortgagors third-party fees).
            Other courts considering the propriety of mortgage-related fees have undertaken more in-depth analyses than the Washington court when interpreting the similar phrase “permitted by law" In Alexander v. Carrington Mortgage Services, LLC, the Fourth Circuit Court of Appeals evaluated whether a loan servicer's charging of convenience fees was proper under the Federal Fair Debt Collections Practices Act ("FDCPA").  23  F.4th 370,
 
                                                            -13-
 
377 (4th-C  ir. 2022).  The FDCPA allowed only the collection of debt where the amount was "expressly authorized  by the agreement creating the debt or permitted by law."  Id.  at 377. In rejecting the defendant mortgage loan servicer's argument that "permitted by law" meant not prohibited by law, the court considered dictionary definitions of the word "permit."   Id.   Although  the definition of  "permit" in  Black's  Law Dictionary  (10th ed. . 2014) included  both "to allow or admit of" and  to "consent  to formally,"  the Alexander court explained  that "allow and  permit have an important  connotative difference. Allow . . . suggests merely the absence of opposition, or refraining from a proscription. In contrast, permit suggests affirmative sanction or approval." Id.(citing Gamer's Dictionary of Legal Usage, 46 (3d ed. 2011)).
            The Alexander court concluded that "permitted by law" means that "some form of affirmative sanction (that is, some 'law'), rather than mere lack of prohibition, is required." Alexander, 23 F.4th at 388. The court also rejected the defendant mortgage servicer's expansive interpretation of "permitted by law" because its consequences were "worrisome": "so long as the law does not expressly prohibit it from doing so, [the defendant claims], it can charge whatever fees it wishes." See id. at 378.
            Similarly, the Eleventh Circuit Court of Appeals recently came to the same conclusion as the Alexander court when considering the same provision of the FDCPA. See Glover v. Ocwen Loan Servicing, LLC, 127 F.4th 1278, 1291-94 (11th Cir. 2025) (finding the phrase 1' permitted by law" in the FDCPA means expressly permitted by law). In
 
                                                            -14-
 
Glover, the loan servicer charged borrowers service fees if they opted to pay their mortgage payments online or by phone rather than by mail. Id. at 1283. The court found those fees to be impermissible because they were not expressly permitted by law, noting that the phrase "suggests that some affirmative sanction, rather than mere lack of prohibition, is required." Id. at 1292.
            The  Alexander  and  Glover  courts'  reading  of   the  phrase  "permitted  by  law" is consistent with most, but not all, courts in loan fee ·litigation. In Salom v. Nationstar Mortgage LLC, 24-cv-444, 2024 WL 4436972, *7 (W.D. Wash..2024), the court addressed the FDCPA provision requiring that, to be lawful, any  fee  collected  incidentally  to  the principal loan amount must be expressly  authorized  by  the  agreement  or  permitted  by law. See id. at *7. The Salom court found a loan servicer's expedited payoff fee impermissible after ruling that "permitted by law ... requires affirmative  sanction  or approval. ... " Id.; Baxter v. AmeriHome Mort. Co., LLC, 617 F.Supp.3d 346, 355 (D. Md. 2022) (same); McFadden v. Nationstar Mortgage LLC d/bla Mr. Cooper, No. 20-cv-166, 2022 WL 1001253, *7 (D. D.C. 2022) (same); see also Finn v. Cup 4 Cup LLC, No. 2:22-cv-00334, 2023 WL 8082080, *9 (D. Me. 2023) (noting that a 2023 Merriam-Webster Dictionary definition of" permit" is "to consent to expressly or formally"); but see Peterson v. Kitsap Community Fed. Credit Union,171 Wash. App. 404,430 (2012) (concluding that because the 2002 edition  of  Webster's  Dictionary  defined  "to permit" as "to allow" or "to tolerate," "the
 
                                                            -15-
 
legislature may “permit' an  act or transaction  to occur by inaction or by failing to pass a law proscribing certain conduct").
            Similarly, in Custer v. Dovenmuehle Mortgage, Inc., the court rejected a loan servicer's argument that it was legally entitled to charge a fee for payment by phone so long as it was not expressly prohibited by law. 1:24-cv-306, 2024 WL 4528187, *3 (M.D. N.C. 2024). The Court ruled that the loan servicer had failed to point to any legal authority "explicitly entitl[ing] it to collect a fee incidental to the principal debt from a consumer who pays by phone/' where North Carolina's Mortgage Debt Collection and Servicing Act required that all fees charged by mortgage loan servicers be "permitted under applicable law and the contracts between the parties." Id.; see also Tuttle v. Equifax Check, 190 F.3d 9, 13  (2d Cir. 1999) (noting that 11[t]here is some force to this argument" that service charge can be permitted by law for purposes of FDCPA only if statute affirmatively authorizes it, in light of case law and definition of "permit" in Webster's Dictionary, but concluding that Connecticut law affirmatively authorized service charge).
            The Court agrees with the analysis in Alexander and Glover and other decisions in line with it. The Court therefore holds that the phrase "permitted under  applicable  law" in Paragraph 23 of the Mortgage means expressly authorized by controlling law. This construction is sound. It also avoids the troublesome result possible under Mr. Cooper's reading of Paragraph 23: that mortgagors would be unable to have their mortgages discharged unless they paid whatever amount a third party, which they had no say in
 
                                                            -16-
 
selecting, might choose to charge to prepare and record the lien release. See Glover, 127 F.4th at 1293 (finding that borrower's payment of mortgage bill did not equate to borrower's assent to pay a convenience fee because doing so would  allow loan servicers to "be free to offer unfair terms to consumers who cannot seek a better deal elsewhere"). In sum, because the Fee is not expressly authorized under any controlling law, Mr. Cooper impermissibly charged the Fee to Mr. Bosworth at payoff.
                                    3.         Ambiguity and Contracts of Adhesion
            Even if the Court did not conclude that "permitted"  means expressly  permitted, the same conclusion follows by applying contract construction principles related to ambiguity and contracts of adhesion. The lack of uniformity among courts on the meaning of the phrase, as described above, supports a conclusion that the phrase is ambiguous because "it is susceptible of more than one meaning and  reasonably intelligent persons would differ as to which meaning is the proper one." See Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). Notwithstanding the Court's conclusion, reasonable minds could differ as to whether "permitted under applicable law" in the Mortgage means expressly permitted by or not prohibited by applicable law.
            The Court, in interpreting ambiguous language in an adhesion contract, "seeks to effectuate, not the actual intentions of the parties in each transaction, but instead the meaning an objectively reasonable person in the nondrafting party's position would give to the language in the contract." James B. Nutter & Co. v. Est. of Murphy, 478 Mass. 664,
 
                                                -17-
 
669-70 (2018). As between the two parties to this litigation, Mr. Bosworth was the nondrafting party, in contrast to Mr. Cooper  who,  as  explained  above,  can  be  fairly viewed as standing in the place of the Lender, a party  to the Mortgage.  See, e.g., Khan,  2014 WL 794193, at *2; Costello, 2018 WL 11368402, at *5; Charles, 2016 WL 950968, at *3-4. Therefore, the Court construes the ambiguous language in Paragraph 23, part of an adhesion contract, in Mr. Bosworth's favor. Cf In re Andrews, 78 B.R. 78, 81 (Bkrtcy. E.D. Pa. 1987) ("Since the Mortgagee, as an assignee, steps into the shoes of ... the drafter f  the adhesion contract, - the admitted ambiguity . . . must be construed against the Mortgagee").
            The Court finds that an objectively reasonable mortgagor would believe that the Fee would be "permitted under Applicable law" only if some law expressly authorized it. A reasonable mortgagor would recognize that the contrary interpretation would potentially leave the mortgagor on the hook for an unlimited amount and incentivize the third party to charge any fee at alt understanding that the loan servicer could pass it on to the mortgagor. Moreover, a reasonable mortgagor would expect that if "permitted under applicable law" were intended to mean that the Fee was permissible as long as no law expressly prohibited it, the language could have easily been drafted to say so clearly and would have been so drafted. Mr. Bosworth has proven that the Fee was not expressly permitted under any applicable law and that, consequently, Mr. Cooper's. charging and collection of it from Mr. Bosworth was not permissible.
 
                                                            -18-
 
II.        G.L. c. 93A
            Upon determining that Mr. Cooper impermissibly charged Mr. Bosworth the Fee, the Court now turns to whether Mr. Cooper's improper charging and collection of the Fee amounted to a violation of G.L. c. 93A. G.L. c. 93A's consumer remedy provision created substantive rights extending to any individual injured by unfair or deceptive acts or practices. G.L. c. 93A, §§ 2, 9. The purpose of section 9 is "to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace" by "impos[ingl liability on persons seeking to profit from unfair practices." UBS Fin. Servs., Inc. v. Aliberti, 483 Mass. at 410 {2019) (quoting Hennan v. Admit One Ticket Agency LLC, 454 Mass. 611, 615 (2006)).
            To prevail on his claim under the Consumer Protection Act, Mr. Bosworth must prove: (1) Mr. Cooper committed an unfair or deceptive act or practice; (2) Mr. Cooper's unfair or deceptive act or practice occurred  in  trade or commerce; and  (3) Mr. Bosworth suffered an injury caused by Mr. Cooper's unfair or deceptive conduct. UBS Fin. Servs., Inc., 483 Mass. 396 at 410. Mr. Bosworth may also prevail by showing that Mr. Cooper's conduct constituted a per se unfair or deceptive act or practice proscribed by G.L. c. 93A, § 2 and that Mr. Cooper's conduct caused Mr. Bosworth's injury. Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc., 445 Mass. 790, 798 (2006)("IA] plaintiff seeking a remedy under G.L. 93A, § 9, must demonstrate that even a per se deception [under§ 2] caused a loss").
 
                                                            -19-
 
A.        Unfair or Deceptive Act or Practice
            G.L. c. 93A does not define what constitutes an unfair or deceptive act or practice. In considering unfairness, the Court must review all the circumstances of the case and consider: "(1) whether the practice ... is within at least the penumbra of some common- law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous;,{and] (3) whether it causes substantial injury to consumers...." UBS Fin. Servs., Inc., 483 Mass. at 412 (quoting PMP Assocs., Inc. v. Globe Newspaper  Co., 366  Mass. 593,  596,  (1975)).   The  Court  must  also evaluate  the equities between the parties and what they knew or should have known. Swanson v. Bankers Life Co., 389 Mass. 345, 349 (1983).
            As with unfairness, "[w]hether conduct is deceptive is a question of fact." Aspinall v. Philip Morris Cos., Inc., 442 Mass. 381, 394 (2004).   Mr. Bosworth need  not prove "that [he] relied on the representation, or that the defendant intended to deceive the plaintiff, or even knowledge on the part of the defendant that the representation was false." See Id. (internal citations omitted). A practice is deceptive if it could reasonably be found to have caused a person to act differently than that person otherwise would have acted, or if the conduct has a tendency to deceive. Id. ("In determining whether an act or practice is deceptive, regard must be had . . . to the effect which the act or practice might reasonably be expected to have upon the general public").
 
                                                            -20-
 
            Mr. Bosworth asserts that Mr. Cooper's acts violated consumer protection laws requiring loan servicers to provide borrowers with accurate payoff statements. Mr. Bosworth lists the following regulations and statutes: (1) the Unfair Loan Servicing Practices Regulation, 209 Code Mass. Regs.§ 18.23 (providing that it is an unfair loan servicing practice to misrepresent "the amount, nature or terms of any fee or payment due  or claimed to be due on a loan, the terms and conditions of the servicing contract, or the borrower's obligations under the loan"); (2) the Payoff Statute, G. L. c. 183, § 54D ("(c) The payoff statement shall specify an amount certain ... that will pay off any and all indebtedness  secured by the mortgage..  ,-  ."); (3)  the Truth in Lend g Act ("TILA"), 15 U.S.C. § 1639g ("A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time"); and (4) 12 Code Fed. Regs. § 1026.36(c)(3) ("In connection with a consumer credit transaction secured by a consumer's dwelling, a ... servicer ... must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date"). Mr. Bosworth,  however,  did  little  to  prove  each  of  these  laws  have been violated. For example, Mr. Bosworth's bare declaration that Mr. Cooper violated TILA is insufficient to prove a violation on this record. See Kemp v. Seterus, Inc., 348 F.Supp.3d 443, 447 (D. Md. 2018)  (dismissing TILA claim against loan servicer that provided inaccurate payoff statement, allegedly in violation of 15 U.S.C. § 1639g; servicer was not loan originator or assignee of loan and therefore had no liability for alleged violations of TILA); but see Dunn
 
                                                            -21-
 
v. PHH Mortgage Corp., Civil No. 20-5848, 2021 WL 870659, at *4-5 (D. N.J. 2021) (denying motion to dismiss TILA claim against mortgage servicer for inaccurate payoff statement where complaint alleged that defendant owned servicing rights, the assignment was voluntary, and payoff statement could be determined to be inaccurate on its face).
            The Court need not examine whether Mr. Cooper violated each of these laws because the first is dispositive. 209 Code Mass. Regs.§ 18.23, which mandates fair loan servicing practices, provides in pertinent part:
A third-party loan servicer may not use unfair ... means in servicing any loan:···the following conduct is a violation of 209 CMR 18.23: ... (9) Misrepresenting any material information in connection with the servicing of the loan, including but not limited to misrepresenting the amount, nature or terms of any fee or payment due or claimed to be due on a loan, the terms and conditions of the servicing contract, or the borrower's obligations under the loan.
Pursuant to 209 Code Mass. Regs.§ 18.27(1): "A violation of the provisions of 209 CMR 18.00 shall be considered an unfair or deceptive act or practice under M.G.L. c. 93A, § 2, and subject to the penalties contained in M.G.L. c. 93A." The regulations in 209 Code Mass. Regs. § 18.00 et seq. govern the conduct of debt collectors and loan servicers. Moreover, 940 Code Mass. Regs.§ 3.16(4) provides that an act or practice violates G.L. c. 93A, § 2, if it violates "Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2."
            The Court has already concluded that Paragraph 23 of the Mortgage did not authorize Mr. Cooper to charge and collect the Fee. Therefore, Mr. Cooper had no
 
                                                            -22-
 
authority to include it in any payoff statement. Even if Mr. Cooper was allowed to charge the Fee, the Fee was not part of Mr. Bosworth's secured debt and should not have been included in the two payoff statements issued by Mr. Cooper as if it were required to be paid to discharge the Mortgage. The Mortgage refers to Mr. Bosworth's debt as including principal  and  interest  on  the "debt  evidenced  by  the  Note."  Ex. 3  at 3, 11.     It also expressly identifies certain  amounts,  including  payments for  property  insurance,  see  Ex. 3 at 5, '.II 5, and to protect the Lender's interest in the property, see Ex. 3 at 7, '.II 9, that "shall become additional debt of Borrower secured" by the Mortgage if paid by the Lender. In contrast,.  the Fee  provision  appears  in  Paragraph  23,  entitled  Release,  and  says  nothing about that fee being part of the debt of the mortgagor.
            The payoff statements issued by Mr. Cooper listed not just amounts due pursuant to the Mortgage, but also the impermissible Fee. Mr. Bosworth reasonably believed, as would any reasonable borrower, that the lien on his Property would not be released  unless and until he paid the Fee. See Dwyer v. J.I. Kislak Mortg. Corp., 103 Wash. App. 542, 547 (2000) ("It is reasonable to assume that {the mortgage payoff statement] would include only those charges actually required to release the mortgage, or if other fees appeared, that they would be specifically identified as extraneous  charges that need  not be paid in order to obtain a release of the prior lien"). The second page of the February 2020 payoff statement explicitly stated that Mr. Cooper would forward the necessary documents to the Recorder's Office "to release our lien" upon Mr. Cooper's processing
 
                                                            -23-
 
of "payment in full." Ex. 3 at 2 (emphasis added); Cf Beyer v. Countrywide Home Loans Servicing LP, 2008 WL 1791506, at "'5-6 (W.D. Wash. 2008) (finding "expedited payoff service fee" did not violate Washington's consumer protection law where the payoff statement explicitly stated that payment of the fee was "NOT a condition for the release or reconveyance of the Security Instrument") (emphasis in original)). Beyond Mr. Cooper's misleading statements in the payoff statements, Mr. Cooper's first bill to Mr. Bosworth after taking over servicing of his Loan similarly stated that Mr. Cooper would not discharge the Mortgage unless all amounts requested on the payoff statement were paid in full. Ex. 7 at 2. Mr. Cooper therefore mi represented the nature and amount due to discharge the Mortgage and misrepresented Mr. Bosworth's obligations under the Mortgage.
            The Court finds and rules that Mr. Cooper's inaccurate payoff statements violated 209 Code Mass. Regs. § 18.23, which, as set forth above, provides that it is an unfair loan servicing practice to misrepresent, inter alia, "the amount, nature or terms of any fee or payment due or claimed to be due on a loan, the terms and conditions of the servicing contract, or the borrower's obligations under the loan." These types of misrepresentations in loan servicing constitute per se violations of G.L. c. 93A, pursuant to 209 Code Mass. Regs. § 18.27(1).
            Even if Mr. Cooper's conduct were not deemed a per se violation of G.L. c. 93A, the Court finds that Mr. Cooper's conduct in this case was unfair and deceptive for the
 
                                                            -24-
 
reasons already stated. In addition, the payoff statements did not  provide  any information about what the Fee was beyond its abstruse title of Third  Party Reconveyance Preparation Fee. Instead, to obtain any information from  Mr. Cooper about the nature of the Fee, Mr. Bosworth had to search for a reference to a website buried in fine print on the second page of his periodic bill, and then navigate to the website's long list of possible fees. Cf Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 294 (1980) (contract provision for franchise termination did not unfairly surprise plaintiffs, as "provision was neither obscurely worded nor buried in fine print in the contract," but was specifically pointed out to plaintiffs before they signed it).
            Mr. Cooper's misrepresentations in charging and collecting the Fee not only ran afoul of an established concept of fairness as set forth in 209 Code Mass. Regs. § 18.23, but they are also unethical because they misled Mr. Bosworth to believe that he had to pay the Fee in order to discharge the Mortgage, where the Fee was not permissible and was  not  part of  Mr. Bosworth's  secured  debt.   Even  if  Mr. Cooper  believed  it could properly charge the fee pursuant to Paragraph 23, Mr. Bosworth need not prove that Mr. Cooper knew the representation was false in order to recover. See Aspinall, 442 Mass. at 394; Slaney v. Westwood Auto, Inc., 366 Mass. 688,704 (1975).
            Mr. Cooper's practice of including the Fee in payoff statements in Massachusetts, where it is not permitted under applicable law, had a tendency to deceive mortgagors while granting Mr. Cooper the unbargained-for benefit of passing on its business
 
                                                            -25-
 
expenses to mortgagors. The practice could reasonably be found to have caused a mortgagor to have acted differently by paying it, rather than refusing to pay (or at least questioning) it if the mortgagor had known that it was an impermissible fee.  Mr. Cooper's misrepresentation had a coercive effect because Mr. Bosworth reasonably believed that he had no other choice but to pay the impermissible Fee in order for the lien on his Property to be released. See Massachusetts Emp'rs Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39, 42-43 (1995) (finding conduct that had ''a coercive quality [], with other facts, warranted a finding of unfair acts or practices").  In this transaction, Mr. Cooper was in   a greater position of power, where Mr. Bosworth had no influence on who his loan servicer  would  be at the  time of  payoff  or  on the amount of  the Fee.  See Swanson, 389 Mass. at 349 (finding that the court must consider the equities between the parties in determining unfairness); see also Glover, 127 F.4th at 1283 ("[Loan servicer's] fees may have been optional, but it charged those fees to consumers who had no option but to do business with it"). For these re sons, the Court finds and rules that  Mr.  Cooper's charging the Fee, by including it on the two payoff statements issued to Mr. Bosworth, and its collection of it, were unfair and deceptive acts in violation of G.L. c. 93A.
                        B.        Conduct in Trade or Commerce
            While there appears to be no dispute over the second element, the Court finds that Mr. Cooper's conduct in issuing the payoff statements charging and later collecting the Fee occurred in trade or commerce because Mr. Cooper did so as it was operating in a 
                                                            -26-
 
"business context." See Feeney v. Dell Inc., 454 Mass. 192,212 (2009).
                        C.        Plaintiff's Injury
            In order to recover, Mr. Bosworth must also show that he suffered some loss caused by Mr. Cooper's unfair or deceptive conduct, and that the loss was foreseeable. Tyler v. Michaels Stores, Inc., 464 Mass. 492, 503 (2013) ("[T]he unfair or deceptive act or practice must cause the consumer some kind of separate, identifiable harm arising from the violation itself"); Kohl v. Silver Lake Motors, Inc., 369 Mass. 795, 800 ("Only those losses... which were the foreseeable consequence of [defendant's} deception should be recoverable"). As Mr. Bosworth would not have paid the Fee if not for Mr. Cooper's misleading payoff statements, Mr. Bosworth has proven that he suffered a loss of $20. The loss was also foreseeable to Mr. Cooper, which impermissibly charged the $20.
                        D.        Willful and Knowing Violation of G.L. c. 93A
            The next questi9n is whether Mr. Cooper's G.L. c. 93A violation was willful or knowing, in which case Mr. Bosworth would . be entitled to an award of multiple damages. See G.L. c. 93A, § 9. Willful or knowing violations "need not be malicious, but must constitute more than negligence;'' and include"conduct that is intentionally gainful, ... or demonstrates a willful recklessness or conscious, knowing disregard for its likely results." Chiulli v. Liberty Mutual Insurance, Inc., 97 Mass. App. Ct. 248, 260 (2020) (quotations and citations omitted).
 
                                                            -27-
 
            Although impermissible, the Fee was, in all the circumstances, not an exorbitant amount when compared with what has been viewed as reasonable discharge fee amounts in other jurisdictions that allow these types of fees. See, e.g., Cal. Civ. Code 2941(e) (1)-(2) (fee up to $45 presumed reasonable); N.J. Stat. Ann.§ 46.18-11.2(b)(2) (mortgagor must pay release recording fee and service fee up to $25, provided mortgagor received notice of these fees); S.C. Code Ann. § 29-3-320 (mortgagee may charge statutory recording fee and additional fee up to $25 to process satisfaction).
            Mr. Cooper used the Fee to pay NTC for its services. The benefit to Mr. Cooper was avoiding having to undertake the same services -house and earning an unspecified amount of interest on $20 for 44 days. Neither the cost to Mr. Bosworth nor the benefits to Mr. Cooper in their transaction were great. There was no evidence at trial that Mr. Cooper knew that charging the Fee in Massachusetts constituted an unfair or deceptive act. See Trites v. Cricones, 105 Mass. App. Ct. 246, 255 n. 10 (2025) (affirming court's finding of G.L. c. 93A violations that were not knowing or willful because the "judge reasonably concluded that even though the defendants knew about the contaminants in the soil, they did not know that their failure to disclose them to [plaintiffs] amounted to unfair and deceptive conduct").
            Mr. Cooper retained and paid NTC to perform mortgage discharge preparation and recordation services for thousands of mortgagors all over the country each month, and in the majority of cases, Mr. Cooper passed on the Fee to mortgagors. Mr. Bosworth
 
                                                            -28-
 
did not present any evidence as to how many (or if any) of those mortgagors' properties were in jurisdictions like Massachusetts where the fee is not permitted under applicable law. Therefore, the Court has no evidence upon which to reach conclusions beyond this case about the extent of Mr. Cooper's impermissible charging and collection of the Fee under Paragraph 23 of the Mortgage or the amount of interest Mr. Cooper may earn as a result of this practice. The Court therefore finds that Mr. Cooper's G.L. c. 93A violation was not willful or knowing.
                        E.         Damages
            Mr. Bosworth has proven his G.L. c. 93A claim and a loss of $20. He is therefore entitled  to a nominal damages award of $25 and  reasonable attorneys' fee .  G.L. c.  93A, § 9(3),  (4).[2]     Mr. Bosworth  must  submit  a  request for  reasonable  attorneys'  fees, with adequate support. The Court reminds the parties that:
What constitutes reasonable attorney's fees is a multifactor assessment of the  nature of the  case and the issues presented, the time and labor required, the amount  of  damages  involved,  the result obtained,  the  experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.
Vermont Mut. Ins. Co. v. Poirier, 490 Mass. 161, 166 (2022) (quoting Blake v. Hometown Am. Cmtys., Inc., 486 Mass. 268, 284-85 (2020)) (internal quotations omitted).
 
--------------------------------------------
 
[2] Mr. Bosworth's assertion in his post-trial memorandum that he is entitled to an award of $500 in damages for a purported violation of G.L. c. 183 § 54D is groundless, as he has not alleged such a claim and where at trial, Mr. Bosworth solely pursued claims of unjust enrichment and violations of G.L. c. 93A.
 
                                                            -29-
 
III. Unjust Enrichment
            Mr. Bosworth contends that Mr. Cooper was unjustly enriched by charging and collecting from Mr. Bosworth the Fee. Unjust enrichment is the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." See Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005). To recover on a theory of unjust enrichment, a claimant must show that it conferred a benefit on the opposing party, or that that party obtained money or property belonging to the claimant, which it would be unjust for the opposing party to retain. See Salamon v. Terra, 394 Mass. 857, 859 (1985). "A determination of unjust enrichment is one in which considerations of equity and morality play a large part." Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 644 (2013) (quotations and alteration omitted). "A plaintiff asserting a claim for unjust enrichment  must establish  not  only that the defendant  received  a benefit, but  also. that such a .benefit w a·s  unjust,  a  quality  that  turns on the reasonable  expectations  of  ·the parties." Id. (quotations omitted).
            Consistent with the Court's findings set forth above, Mr. Bosworth has established that Mr. Cooper's charging and collection of the impermissible Fee unjustly benefited Mr. Cooper and adversely affected Mr. Bosworth, who was deprived of $20. Mr. Cooper's argument that Mr. Bosworth cannot recover for unjust enrichment  because  the parties did not have a contract is not supported by law. See Salamon, 394 Mass. at 859 (finding that no contract is required for recovery for unjust enrichment). Similarly, that Mr.
 
                                                            -30-
 
Cooper paid the entire $20 to NTC does not save Mr. Cooper from liability for unjust enrichment because Mr. Cooper deposited the $20, to which it was not entitled, into an interest-bearing account and retained it for 44 days before paying NTC. Mr. Cooper also benefited by impermissibly passing on its expenses related to preparing the discharge of the Mortgage to Mr. Bosworth. Equity considerations·compel the conclusion that it  would be unjust for Mr. Cooper not to return the $20 to Mr. Bosworth. See Metropolitan Life Ins. Co., 464 Mass. at 644.
            Although Mr. Bosworth has proven unjust enrichment, the basis of that claim is essentially identical to that of his G.L. c. 93A claim. Because Mr. Bosworth has an adequate remedy under c. 93A, he cannot also recover for unjust enrichment. See Santagate, 64 Mass. App. Ct. at 329 ("An equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law"); Hennessy v. Brookdale Senior Living Communities,  Inc., 1784CV04215,  35 Mass.  L.  Rptr. 232  (Super.  Ct. 2018)  (Salinger, J.) (plaintiff who has remedy under G.L. c. 93A or another statute cannot also recover under unjust enrichment theory).
 
                                                            -31-
 
ORDER
            For the foregoing reasons, the Court grants JUDGMENT as follows:
1.         As to Plaintiff's claim alleging unjust enrichment, JUDGMENT to PLAINTIFF.
2.         As to Plaintiff's claim alleging unfair and deceptive acts in the· conduct of a trade or business, JUDGMENT to PLAINTIFF.
3.         Plaintiff shall recover on his G.L. c. 93A claim nominal damages in the amount of $25 and reasonable attorneys' fees. '
4.         Within 21 days of entry of this Order, Plaintiff shall serve upon Defendant a request for attorneys' fees, including an affidavit setting forth the amount of · attorneys' fees he contends are reasonable, with appropriate documentation. The parties shall file the request with the Court pursuant to the procedures outlined in Superior Court Rule 9A. If the parties request it and the Court deems it necessary, the Court will conduct a hearing on the issue of attorneys' fees on a date to be scheduled by e Clerk's Office.